## COMMONWEALTH vs. HENRY T. GIBSON.

No. 11-P-1107.

Berkshire. September 13, 2012. - November 29, 2012.

Present: CYPHER, KAFKER, & KATZMANN, JJ.

*Motor Vehicle,* Operating under the influence. *Practice, Criminal,* Instructions to jury. *Constitutional Law,* Breathalyzer test, Self-incrimination. *Evidence,* Breathalyzer test.

At the trial of a complaint charging, inter alia, operating a motor vehicle while under the influence of intoxicating liquor, in which no breathalyzer test report or results were admitted in evidence, a substantial risk of a miscarriage of justice arose from the judge's erroneous limiting instruction that, in addition to appropriately instructing the jury that they were not to consider any absence of breathalyzer evidence, informed them that a person does not have to take a breathalyzer test. [835-838]


COMPLAINT received and sworn to in the Northern Berkshire Division of the District Court Department on February 8, 2010.

The case was tried before *Michael J. Ripps,* J.

*Louis Christopher Cashiola* for the defendant.

*John P. Bossé,* Assistant District Attorney, for the Commonwealth.

CYPHER, J. On February 9, 2010, the defendant, Henry T. Gibson, was charged with operating a motor vehicle while under the influence of intoxicating liquor (OUI), second offense, G. L. c. 90, § 24(1)(a)(1), and failure to stop at a red light, G. L. c. 89, § 9. After a District Court jury returned a guilty verdict on the OUI charge, the defendant pleaded guilty to the second offense portion of the charge. On appeal, he claims that the judge erred in instructing the jurors on the absence of breathalyzer evidence and improperly denied his motion for a required finding of not guilty. We reverse.

1. *Background.* On February 7, 2010, "Super Bowl Sunday,"

the defendant went to the Eagles Club and then to the Elks Club in North Adams to watch the football game and socialize with friends. Each establishment had set up a "potluck" style dinner and televisions to watch the game. At the Eagles Club, the defendant drank two light beers, and had a few plates of food. At the game's half time, he left and drove to the Elks Club, where he had two more light beers, and ate more food. Shortly before the game ended, at about 10:00 P.M., the defendant grew tired and decided to drive home. At an intersection on Eagle Street, he stopped at a red light. After waiting for ten to twenty seconds, the defendant became impatient, and wanting to get home sooner, looked both ways, saw that no cars were coming, and proceeded through the intersection.

Officer Anthony Beverly of the North Adams police department was waiting behind the defendant at the intersection and saw him drive through the red light. He activated the blue lights of his cruiser and the defendant immediately and safely pulled over to the side of the road. Officer Beverly approached the defendant's car, and while speaking with him, smelled alcohol and observed "inconsistent" behavior and "sluggish" movements. In response to Officer Beverly's inquiries, the defendant admitted to having consumed four beers over the course of four hours while watching the Super Bowl.

Because he suspected that the defendant had been driving while under the influence of alcohol, Officer Beverly instructed the defendant to perform several field sobriety tests alongside the road. By that time, another officer had arrived to observe the tests and provide back-up support. The defendant attempted the tests, and in Officer Beverly's opinion failed each one. Officer Beverly accordingly placed the defendant under arrest and transported him to the station for booking.

2. *Discussion.* No breathalyzer test report or results were entered into evidence at trial. To address this issue, the judge instructed the jury that they were to decide the case based only on the evidence they heard at trial.[1] After the jury were sent out to deliberate, however, they immediately returned with a ques-

---

[1]The judge specifically stated, in part: "Don't go in there and say 'Well geez, I didn't hear anything about this.' If you didn't hear about it, it's not in this case."

tion: "Why would a [b]reathalyzer test be or not be administered?" The judge conferred with counsel, and charged the jury as follows:

> "You may have noticed there was no evidence of a [b]reathalyzer test. There are many reasons you might not hear evidence about a [b]reathalyzer. The police do not have to offer it, *a person does not have to take it.* The machine might not have been working.
>
> "You are not to mention or consider it in any way whatsoever, either for or against either side. Put it completely out of your mind. And that's what I meant before by what I was telling you. It just isn't part of this case. I don't know why it isn't. It doesn't matter. It isn't. You decide the case of the basis of the evidence presented in this case; the testimony from the witnesses, along with the exhibit. I send you back out." (Emphasis supplied.)

On appeal, the defendant argues that his right against self-incrimination under art. 12 of the Massachusetts Declaration of Rights was violated when the judge instructed the jury that a person may refuse to take a breathalyzer test.

"In Massachusetts it is settled that at a criminal trial, evidence that the defendant refused to consent to a blood test or analysis of breath to detect alcohol is not admissible. See *Opinion of the Justices,* 412 Mass. 1201, 1210-1211 (1992); *Commonwealth* v. *Zevitas,* 418 Mass. 677, 681-684 (1994)." *Commmonwealth* v. *Ranieri,* 65 Mass. App. Ct. 366, 370-371 (2006). "Underlying the reasoning in this line of cases is the proposition that refusal evidence is testimonial in nature and that its admission violates the privilege against self-incrimination under the Declaration of Rights of the Massachusetts Constitution." *Id.* at 371. In *Commonwealth* v. *Downs,* 53 Mass. App. Ct. 195 (2001), this court nevertheless acknowledged that "there is wide-spread public information and common knowledge about breathalyzer testing," *id.* at 199, and accordingly held that a limiting instruction which "made no mention either of a defendant's legal right to refuse to take the breathalyzer or the possible reasons for any refusal . . . did not violate the defendant's art. 12 rights." *Id.* at 199-200.

Here, in addition to appropriately instructing the jury that they were not to consider any absence of breathalyzer evidence, the judge informed them that "a person does not have to take [a breathalyzer test]." The Commonwealth concedes that the instruction constituted error, and we agree. See *Commonwealth v. Zevitas*, 418 Mass. at 683 (judge's instruction to jury that the defendant was not required to submit to a breathalyzer test constituted error as it "told the jury, by strong implication at least, that the defendant's blood alcohol level had not been tested, and that the reason no test was conducted was that defendant had refused to submit to such a procedure").

Because defense counsel did not appear to object to the instruction,[2] we consider whether the error created a substantial risk of a miscarriage of justice. *Commonwealth v. Freeman*, 352 Mass. 556, 564 (1967). See *Commonwealth v. Enimpah*, 81 Mass. App. Ct. 657, 659 (2012). In our review, "[w]e consider the strength of the Commonwealth's case, the nature of the error, the significance of the error in the context of the trial, and the possibility that the absence of an objection was the result of a reasonable tactical decision." *Commonwealth v. Bolling*, 462 Mass. 440, 452 (2012), quoting from *Commonwealth v. Azar*, 435 Mass. 675, 687 (2002).

Because the defendant was tried solely on a theory of impaired operation,[3] the Commonwealth was required to prove beyond a reasonable doubt that alcohol diminished the defendant's ability to safely operate a motor vehicle. *Commonwealth v. Connolly*, 394 Mass. 169, 173 (1985). The Commonwealth's proof of impaired operation here was not strong. Officer Beverly stopped the defendant for an essentially technical violation: running a red light after safely stopping and looking both ways. There was no evidence of erratic operation. Although the Commonwealth need not prove the defendant drove in an unsafe manner, see *ibid.*, the evidence of intoxication likewise was not overwhelming. Officer Beverly testified that the defendant lost

---

[2]Defense counsel's response was inaudible, but the defendant concedes on appeal that his counsel did not object at trial. The prosecutor was satisfied with the instruction, but remarked that he had "never heard that middle part where it gives possibilities."

[3]As opposed to a per se violation. See G. L. c. 90, § 24(1)(*a*)(1); *Commonwealth v. Douglas*, 75 Mass. App. Ct. 643, 651 (2009).

his balance a few times during the nine-step walk and turn test and the one-leg stand test, and skipped the letters Q through V while reciting the alphabet. The defendant disputed the officer's account of the sobriety tests. Although there was evidence of an odor of alcohol on the defendant's breath, it was undisputed that the defendant consumed the beers over the course of several hours, with copious amounts of food. Finally, Officer Beverly did not describe what he meant by "inconsistent" and "sluggish" behavior, and how those behaviors might be indicative of a person's intoxication. In any event, the officer's testimony was offset by the late hour of the stop and the defendant's testimony that he had been awake since 5:30 that morning.

Considering the second and third factors together, the error here is constitutional in nature, and is one that our courts have deemed prejudicial to defendants. See *Commonwealth* v. *Zevitas*, 418 Mass. at 684 (noting prejudicial effect to defendant when jury given inappropriate limiting instruction on absence of breathalyzer evidence). Last, given the significance of the error and prejudice to the defendant, we see no reason why counsel would not have insisted on a correct instruction. In sum, as we "have a serious doubt whether the result of the trial might have been different had the error not been made," *Commonwealth* v. *LeFave*, 430 Mass. 169, 174 (1999), we conclude that the judge's erroneous limiting instruction created a substantial risk of miscarriage of justice.[4]

The judgment is reversed and the verdict is set aside.

*So ordered.*

---

[4]The defendant also claims that the judge improperly denied his motion for a required finding of not guilty because the Commonwealth failed to prove that his consumption of liquor diminished his ability to operate a motor vehicle safely. See *Commonwealth* v. *Connolly*, 394 Mass. at 173. Although, as discussed, the evidence of impaired operation was not overwhelming, *in the light most favorable to the Commonwealth*, *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979), it was sufficient to permit his conviction.