## COMMONWEALTH *vs.* ROBERT P. LOPES.

No. 12-P-1661.

Berkshire. December 4, 2013. - May 28, 2014.

Present: CYPHER, KANTROWITZ, & COHEN, JJ.

*Motor Vehicle,* Operating under the influence, License to operate. *License. Registrar of Motor Vehicles,* Revocation of license to operate. *Constitutional Law,* Confrontation of witnesses. *Practice, Criminal,* Confrontation of witnesses, Stipulation, Prior conviction, Instructions to jury. *Evidence,* Prior conviction.

At the trial of a criminal complaint charging the defendant with operating a motor vehicle while under the influence of liquor (OUI), fifth offense, and operating a motor vehicle while under the influence after the defendant's license had been suspended for operating a motor vehicle while under the influence of liquor, the judge did not abuse her discretion in deciding to rescind the defendant's stipulation to all but one element of the latter count (a stipulation that would not be read to the jury), where the judge thoroughly explored the defendant's concerns about potential prejudice arising from the simultaneous trial of the two counts and gave generous consideration to the defendant's proposed course of action, but elected to try the case in the manner permitted by *Commonwealth* v. *Beaulieu,* 79 Mass. App. Ct. 100, 102-103 (2011) [347-350]; further, the judge did not err in not giving an instruction on the limited purpose of a witness's testimony that the defendant's license had been revoked for "DWI," where the judge twice previously had informed the jury that evidence of the defendant's prior OUI conviction could be used only to determine whether the Commonwealth had proved the reason for the defendant's license suspension, and where she did so again during her final charge [350-351].

At the trial of a criminal complaint charging the defendant with operating a motor vehicle while under the influence of liquor, fifth offense, and operating a motor vehicle while under the influence after the defendant's license had been suspended for operating a motor vehicle while under the influence of liquor, the admission in evidence of a redacted certificate of the defendant's driving record from the Registry of Motor Vehicles (RMV), even if testimonial in part, did not violate the defendant's right to confront witnesses against him, where a manager from the RMV testified regarding the certificate and the defendant cross-examined her; further, the witness's testimony about her firsthand knowledge of RMV procedures, her review of business records on the RMV computer, and her in-court examination of the certificate and notice letter did not constitute inadmissible hearsay; finally, no substantial risk of a miscarriage of justice arose from admission

of the RMV evidence, where the defendant admitted during his testimony that, on the date of the incident, he knew that his license had been suspended, and where this admission was central to his defense. [351-352]

COMPLAINT received and sworn to in the Southern Berkshire Division of the District Court Department on August 19, 2011.

The case was tried before *Rita S. Koenigs,* J.

*Edmund R. St. John, III,* for the defendant.

*John P. Bossé,* Assistant District Attorney, for the Commonwealth.

COHEN, J. The defendant appeals from two convictions arising from an incident on August 18, 2011: operating a motor vehicle while under the influence of liquor (OUI), fifth offense, pursuant to G. L. c. 90, § 24(1)(*a*)(1) (count one); and operating a motor vehicle while under the influence of liquor after his license had been suspended (and prior to restoration) for operating a motor vehicle while under the influence of liquor (OUI while OAS for OUI), pursuant to G. L. c. 90, § 23 (count two). With the exception of the subsequent offense portion of count one (which later was tried jury-waived), count one and count two were tried together before a District Court jury in June, 2012.

The defendant's appellate issues all relate to the introduction of evidence of his prior conviction for OUI as part of the Commonwealth's proof on count two. For the following reasons, we affirm.

*Background.* Prior to trial, the defendant filed a motion to bifurcate the trial so that the jury would first decide count one without hearing evidence, essential to a finding of guilt on count two, that the defendant's license previously had been suspended or revoked for a prior OUI. The judge denied the motion during a pretrial hearing held on June 18, 2012, but ruled that she would limit the purpose of any such evidence in accordance with *Commonwealth* v. *Beaulieu,* 79 Mass. App. Ct. 100, 102-103 (2011). The defendant also filed a motion to exclude evidence of his prior OUI convictions, his chief concern being to prevent their use for impeachment purposes should he elect to testify. The judge ruled that the convictions would not

be admitted or used to impeach the defendant, but that records of the Registry of Motor Vehicles (RMV) could be introduced to establish that the basis for revocation or suspension of the defendant's license was a prior OUI conviction.

Defense counsel continued to express reservations about potential prejudice resulting from the jury learning of the reason for the suspension of the defendant's license, and proposed that the defendant be permitted to stipulate to all the elements of count two with the exception of the element that he was driving while under the influence on August 18, 2011.[1] The judge agreed, the stipulations were reduced to writing, and the judge conducted a colloquy with the defendant. At the conclusion of the colloquy, the judge found that the defendant's stipulations were made knowingly, intelligently, and voluntarily.

Discussion then ensued as to how count two would be submitted to the jury, and, in particular, how the verdict slip would be worded. The prosecutor voiced concern that a conviction on count two could be vulnerable because the jury would not have found all the elements of the case, and questioned whether the stipulations needed to be read to the jury. Over the prosecutor's objection, the judge ruled that she would tell the jury that there were other elements that had been agreed to by the defendant, but that the only issue before them was whether the defendant was under the influence at the time of the incident. She also ruled that the verdict slip for count two would refer simply to operating while under the influence after "suspension . . . pursuant to General Laws Chapter 90, § 24(1)(*a*)," and that the jury would not be told the reason for the suspension.

Three days later, when the parties reconvened to begin the trial, the judge announced that she had given further thought to complications that would arise if they were to proceed by stipulation. She concluded that doing so was problematic, especially with respect to the verdict slip and reading the complaint to the jury, and reverted to her original view that the case

---

[1] The defendant's stipulations were as follows: (1) On August 18, 2011, the defendant operated a motor vehicle in Great Barrington on Route 41, a public way; (2) at the time of operation, the defendant's right to operate had been suspended; (3) the reason for the license suspension was a previous OUI conviction; (4) the defendant's license had not been restored on August 18; and (5) the defendant knew that his license had been suspended.

should be tried in accordance with the procedures approved in *Beaulieu*, 79 Mass. App. Ct. at 103. The judge ruled that the Commonwealth could introduce one properly redacted OUI conviction, and assured the defendant that she would instruct the jury as to the limited purpose of this evidence. She also encouraged the parties to remind her if they had any concerns about the timeliness or adequacy of her limiting instructions.

The defendant did not object to any of the judge's revised rulings. Defense counsel simply asked that a proposed voir dire question be asked of the prospective jurors to ascertain whether they would be able to follow the judge's limiting instruction. The judge agreed to ask such a question of the venire as a whole, and to allow follow-up at sidebar. When she inquired of the venire,[2] no one indicated any inability to follow a limiting instruction, and there was no need for sidebar inquiry. The defendant expressed no dissatisfaction with this process.

Despite the judge's ruling that the Commonwealth could introduce one redacted certified conviction during the trial, no such evidence was introduced. Instead, in support of count two, the Commonwealth introduced without objection RMV documents pertaining to the defendant, and the testimony of an RMV branch manager who stated, based upon her knowledge of RMV procedures and her review of RMV records, that, on August 18, 2011, the defendant's driver's licensure status was "revoked . . . for DWI [driving while intoxicated]," and that he had been sent notice of the revocation by letter mailed to his address by the RMV on September 23, 2009.

The Commonwealth's other evidence may be summarized as

---

[2]The judge stated as follows: "[Y]ou will be told as a jury . . . that you cannot use the fact, if you find it, of a prior conviction of operating under the influence of alcohol as any evidence that the defendant this time was operating under the influence of alcohol. The only reason you would be given that information is to determine whether the Commonwealth had proven that in fact this was the reason for the suspension of his license. So will you be able to follow the law as I just summarized it very briefly for you? And be able to keep from your minds any evidence regarding the prior conviction in fairly deciding, as you must, whether or not on this occasion the defendant was operating while under the influence of intoxicating liquor? Do you believe that you will fairly be able to do that? And if not, would you kindly raise your hand? And give that some thought. If there are any answers, just raise your hand, if you are not able, you think, to be completely fair and impartial and follow the law as I've explained it."

follows. On August 18, 2011, Officer Jason LaForest of the Great Barrington police department received a dispatch reporting that a person with a suspended driver's license was operating a gray pickup truck. The dispatch identified the truck's make, model, and license plate number. LaForest located the truck traveling southbound on North Plain Road and followed it for about one mile before activating the lights on his cruiser and stopping the truck. As LaForest approached the driver's side of the vehicle, the driver (identified as the defendant) sped off, and LaForest followed in his cruiser.

Over the course of about one mile, LaForest observed the truck weaving. When it approached the intersection with Wright Lane, the defendant made a sharp turn that caused the tires on the truck to emit "smoke" and leave skid marks on the road. The defendant ran over a street sign and ended up on the grassy front lawn of a house. He then opened the door and ran around to the back of the house where he hid in the trees. After being ordered three times to come out, the defendant finally emerged. He was yelling and agitated, and instead of putting his hands in the air as the officer instructed, he approached with fists clenched. The officer sprayed the defendant with pepper spray and, after a brief struggle, placed him in handcuffs.

A second officer, Sergeant William Bartini, arrived on the scene and placed the defendant into LaForest's cruiser. Bartini smelled the strong odor of alcohol on the defendant's breath. Meanwhile, LaForest inventoried the contents of the truck and seized a bottle of whiskey, a bottle of wine, and a can of beer — all of which were unopened. When LaForest returned to the cruiser, where the defendant was now secured, he, too, smelled a strong odor of alcohol.

The defendant was transported to the police station, where he needed help getting into the building. During the booking process, the defendant's speech was slurred, and at times, he appeared incoherent. He was wobbly, and he had mood swings in which he vacillated between being cooperative and uncooperative. Both LaForest and Bartini formed the opinion that he was intoxicated. According to LaForest, after the defendant was placed in a holding cell, he used the toilet and wiped himself with his T-shirt instead of the toilet paper that was in reach.

The defense called three witnesses, including the defendant. The defendant testified that, on the day of his arrest, he had been trimming his neighbor's trees in order to make some money, and had not consumed any alcohol. After finishing the job and getting paid, he drove to a store where he purchased a bottle of whiskey, a bottle of wine, and a can of beer, but he did not drink any of them.

When he was stopped by the police, he panicked and sped off towards his house at high speed, because he knew that his license had been revoked. As he hit the brakes to turn onto Wright Lane, his truck "locked up," slid into the street sign, and landed in his neighbor's yard. The sudden stop caused him to strike his head on the steering wheel; he became dizzy and developed a headache. He then got out of the truck and walked over to some bushes, where he crouched down and tried to hide because he did not want to go to jail for driving after revocation of his license. He complied when the officer told him to come out with his hands up, but the officer nevertheless sprayed him with pepper spray. According to the defendant, any difficulty he had in walking was due to a long-standing disability caused by a work-related accident in which he broke both of his ankles and legs.

The defendant further testified that he did not use the toilet until the next morning and did not use his T-shirt to wipe himself. He wore the same clothes when he went to court for arraignment, and continued to wear them until he was taken to be held at the house of correction and received prison clothing. Prior to trial, he arranged for his personal belongings, including the T-shirt, to be picked up from the house of correction by an investigator working with his attorney.

The defense called the investigator to establish the chain of custody of the T-shirt, which was admitted in evidence. The defense also called the property officer of the Berkshire County sheriff's office, who testified that when a new prisoner comes to the intake area of the house of correction and his clothes are soiled or create a health hazard, the clothes will be laundered for health and safety reasons. There was no record to indicate one way or the other whether the defendant's T-shirt had been laundered.

In closing, defense counsel argued that the defendant's be-
havior was due to his fear of being arrested for driving without
a license, and that the police witnesses should not be believed.
He conceded that the jury would be warranted in convicting the
defendant of the lesser included offense of operating after suspen-
sion (OAS), but urged them not to convict the defendant of
OUI or of OUI while OAS for OUI.

*Discussion.* The defendant claims that (1) the judge's deci-
sion to rescind the defendant's stipulation as to all but one ele-
ment of count two was an abuse of discretion resulting in the
erroneous and prejudicial admission of evidence of a prior similar
conviction; (2) the judge erroneously failed to give a limiting
instruction contemporaneously with the testimony of the RMV
witness that the defendant's license had been revoked for operat-
ing while under the influence; and (3) the admission of the
RMV evidence was error, because the testimony of the RMV
witness was inadmissible hearsay, and the use of RMV records
to establish the fact of his prior OUI conviction violated his
constitutional right to confront witnesses against him. As none
of these claims was properly preserved at trial,[3] we review for a
substantial risk of a miscarriage of justice. See *Commonwealth
v. McCoy*, 456 Mass. 838, 850 (2010), citing *Commonwealth v.
Randolph*, 438 Mass. 290, 298 (2002).

1. *Declining to proceed by stipulation.* The defendant ac-
knowledges that a judge has the authority to vacate a stipulation
if it is deemed improvident or not conducive to justice. See
*Loring* v. *Mercier*, 318 Mass. 599, 601 (1945). He claims,
however, that being allowed to stipulate to all but one element
of count two was necessary to insure that the jury would not
use the evidence of a prior OUI conviction as propensity evidence
and, therefore, the judge's decision not to proceed by partial
stipulation was an abuse of discretion. We discern no such
abuse. The judge thoroughly explored the defendant's concerns
about potential prejudice arising from the simultaneous trial of
counts one and two, and gave generous consideration to the

---

[3]The defendant did not object when the judge reversed course on proceed-
ing by means of a partial stipulation; nor did he object to the absence of a
limiting instruction at the time that the RMV witness testified, or to the
admission of the RMV records.

defendant's proposed course of action. Ultimately, however, the judge was entitled to conclude in her discretion that the better course was to try the case in the manner permitted by *Beaulieu*, 79 Mass. App. Ct. at 102-103.

As in this case, the defendant in *Beaulieu* was tried simultaneously on one count of OUI and a second count of OUI while OAS for OUI. *Id.* at 101-102. On appeal, he argued that the judge erred by denying his motion to bifurcate, *id.* at 102 — a claim that the defendant here does not assert on appeal. In *Beaulieu*, this court rejected the contention that bifurcation was compelled, reasoning that the basis for suspension or revocation of the defendant's license was an element of the crime with which the defendant was charged and not a sentencing enhancement. *Id.* at 102. We held further that it was not error to admit a properly redacted certified copy of the defendant's prior conviction of OUI, because this evidence was integral to proving the crime, the judge gave repeated limiting instructions on the restricted use to be made of it, and the jury could be presumed to have followed those instructions. *Id.* at 103. With *Beaulieu* to guide her, it was within the judge's discretion to utilize the procedures indorsed in that case rather than sailing into uncharted waters with the use of a partial stipulation that would not be read to the jury.

As it turns out, the judge's concerns were well justified. In *Commonwealth* v. *Ortiz*, 466 Mass. 475, 476 (2013), decided after the present case was tried, the Supreme Judicial Court announced that henceforth "it will be incumbent on the Commonwealth to ensure that any stipulation concerning the existence of an element of the crime charged or of any material fact related to proof of the crime is presented in some manner to the jury as part of the evidence of the case." See *id.* at 484-485. The court's rationale was that this rule, albeit not constitutionally based, is consistent with the Commonwealth's burdens of production and proof, will avoid misunderstandings as to whether the element was proved, and is harmonious with the instructions provided to the jury that they are to decide the case from the evidence and that the judge's instructions are not evidence. *Id.* at 484-485 & n.13.[4]

---

[4]Conformably with *Ortiz*, the Standing Advisory Committee on the Rules of

The court also observed in a footnote that where an element of a crime is a "status element" (e.g., the defendant's status as a convicted felon), the United States Supreme Court has held, as a matter of the Federal law of evidence, see Fed.R.Evid. 403 (evidence more prejudicial than probative), that it is an abuse of discretion for a Federal trial judge to refuse a defendant's offer to stipulate to his prior felon status and thereby avoid the potential for prejudice created by identifying for the jury the nature of the prior felony conviction or its underlying facts. *Ortiz,* 466 Mass. at 482 n.9, citing *Old Chief* v. *United States,* 519 U.S. 172, 174, 190-192 (1997). However, because *Ortiz* did not involve a status element, there was no need for the Supreme Judicial Court to consider in what circumstances the refusal to accept a defendant's proffered stipulation might constitute an abuse of discretion under Massachusetts law.

This observation makes no difference in the circumstances of this case. Here, the troublesome element was that the defendant's license had been suspended because of the defendant's prior conviction of the specific crime of OUI. Even if we were to assume that this is a status element and that a judge ordinarily should exercise discretion to allow a defendant to stipulate to a status element in order to avoid undue prejudice, a stipulation to this particular element, unlike a stipulation to a prior conviction of an unidentified felony, would avoid prejudice only if it were *not* read to the jury — an option in tension with the jury's role as fact finder and foreclosed by the holding in *Ortiz,* 466 Mass. at 484-485.

That said, we do not discount the possibility that, despite strong limiting instructions, even the most conscientious jurors may be influenced by evidence of a defendant's prior OUI conviction in assessing whether he later committed the identical crime. For that reason, although the decision to bifurcate is committed to the judge's discretion, it is an option worthy of serious consideration. In *Beaulieu,* 79 Mass. App. Ct. at 102-103, we held that bifurcation was not compelled and that repeated and proper limiting instructions will be presumed to be followed by

Criminal Procedure has recommended the adoption of proposed Rule 23 relative to stipulations to essential elements of a charged offense. As of this writing, the proposed rule has been put out for public comment.

the jury; however, *Beaulieu* should not be understood to discourage bifurcation as a means to prevent potential prejudice in cases of this nature.

2. *Limiting instruction.* The defendant also faults the judge for not giving an instruction on the limited purpose of the RMV witness's testimony that the defendant's license had been revoked for "DWI." Significantly, although the defendant now contends that contemporaneous instruction was essential, he did not request an instruction when the witness testified, even though the judge explicitly had invited counsel to remind her if he had any concerns about the timing or content of the instruction.

Before the RMV witness testified during the afternoon of the first day of trial, the judge already had informed the jury twice that evidence of the defendant's prior OUI conviction could be used only to determine whether the Commonwealth had proved the reason for the defendant's license suspension. She did so during jury selection, see note 2, *supra*, and again during her preliminary instructions.[5] On the second day of trial, when the defendant admitted on cross-examination that his license had been revoked for OUI, the judge again gave a thorough limiting instruction.[6] Finally, the judge thoroughly reiterated the instruction during her final charge.[7]

Here, where the jury were informed of the limitations on their

---

[5]After explaining that the reason for suspension was one of the elements that the Commonwealth was required to prove beyond a reasonable doubt on the charge of OUI while OAS for OUI, the judge instructed: "And I caution you once again that that prior conviction, any evidence of that is relevant only on that issue of the reason for suspension and for no other issue in the trial."

[6]She stated that she would like to "remind" the jury that the reference to "a previous operating under the influence of alcohol . . . is to be considered by you for a limited purpose. The only purpose for which you may use that evidence is in determining the reason for the suspension of the license. It is not relevant on the issue of whether or not on this particular occasion the defendant was operating under the influence of alcohol. So there is a limited use to that information."

[7]In charging on count two, the judge said: "And this is the time when I'm going to remind you that you did hear some evidence about the reason for the suspension of his license being a prior operating under the influence of alcohol conviction. That evidence is relevant only on the issue of the reason for the suspension. You may not use that evidence in any other way, and, most particularly, not to support or in connection with the charge of operating under the influence itself. Or the operating under the influence portion of the charge I'm speaking to you about now."

consideration of the defendant's prior conviction on four separate occasions during the course of a two-day trial, and the certified copy of the record showing the prior conviction was redacted (see *infra*), we consider the judge to have fulfilled her obligations under *Beaulieu*, 79 Mass. App. Ct. at 103. Moreover, even if contemporaneous instruction is good practice, its absence created no substantial risk of a miscarriage of justice in the circumstances.

3. *RMV evidence.* A redacted copy of the defendant's RMV driving record, certified as of August 30, 2011, was introduced in evidence without objection. The exhibit consisted of two pages plus a certification page. The first page contained the defendant's identifying information (e.g., name, address, date of birth, and license number). The second page was a copy of a letter dated September 23, 2009, addressed to the defendant at the address associated with his license.[8] The letter, which was redacted to show only a single offense, "DWI Liquor," stated that the defendant was hereby notified that effective October 3, 2009, his license was revoked, and that the total period of suspension or revocation was "Lifetime." The certification, also dated August 30, 2011, was entitled: "Cert requested for [defendant's license number], by Pittsfield DA." It certified that the attached documents were true copies of the driving history and notice of suspension/revocation as appearing in the records of the RMV in accordance with G. L. c. 90, § 22. It also certified, in accordance with G. L. c. 90, § 23, that there had since been no reinstatement of the license.

RMV branch manager Karen Decker testified after the records were admitted in evidence. She testified that she was trained on issues relating to license suspension and was familiar with how an individual's license is suspended and how the RMV provides notification to that individual by mail. She stated that the defendant's license status on August 18, 2011, was "revoked" and that she knew that "[t]hrough the computer." She also testified that the reason for revocation was "DWI," and that notice was sent to the defendant's address by means of a letter mailed

---

[8]According to the defendant's testimony, this remained his address at the time of the incident in question.

on September 23, 2009. The defendant had the opportunity to cross-examine Decker, and did so briefly.

The defendant makes two arguments with respect to the RMV evidence, neither of which was the subject of objection. Insofar as the defendant argues that Decker's testimony was inadmissible hearsay, he is mistaken. It is evident that she testified as to her firsthand knowledge of RMV procedures, her review of business records on the RMV computer, and her in-court examination of the driving history and notice letter that were admitted in evidence.

Insofar as the defendant argues that the admission of the records themselves violated his right to confront witnesses against him, that argument, too, is without merit. Although the defendant does not make this specific point, it perhaps could be concluded that at least the final portion of the certification was testimonial, as the attestation that there had been no reinstatement of the defendant's license appears to have been created for purposes of trial and not as part of the records kept in the course of ordinary RMV business. See *Commonwealth* v. *Lee,* 466 Mass. 1028, 1029-1030 & n.2 (2013). However, any confrontation issue was obviated by the presentation of Decker's live testimony and the defendant's opportunity to cross-examine her. Compare *Commonwealth* v. *Parenteau,* 460 Mass. 1, 2, 5 (2011).

Furthermore, the defendant admitted during his testimony that on the date of the incident he knew that his license had been revoked. Indeed, this admission was central to his defense on the OUI charge, as it made it possible for him to attribute his flight and attempt to hide from the police to his fear of being arrested for operating after revocation. The defendant also admitted during cross-examination that the revocation had been for OUI. Accordingly, even if there were error in the receipt of any of the RMV evidence, it did not create a substantial risk of a miscarriage of justice.

*Judgments affirmed.*