NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-1144                                            Appeals Court

COMMONWEALTH vs. ARTURO D. CUEVA.

No. 17-P-1144.

Suffolk.     September 11, 2018. - February 12, 2019.

Present:  Vuono, Agnes, & Henry, JJ.


Motor Vehicle, Operating under the influence, License to
     operate.  Due Process of Law, Blood alcohol test,
     Suspension of driver's license, Notice.  Practice,
     Criminal, Prior conviction.  Evidence, Blood alcohol test,
     Prior conviction.  Notice.  Registrar of Motor Vehicles,
     Records.


     Complaint received and sworn to in the Chelsea Division of
the District Court Department on August 31, 2015.

     The case was tried before Matthew J. Nestor, J.


     Joseph P. Lattimore for the defendant.
     Christopher Boutin, Assistant District Attorney, for the
Commonwealth.


     VUONO, J.  A jury in the Chelsea Division of the District

Court Department convicted the defendant of operating a motor

vehicle while under the influence of intoxicating liquor (OUI),

third offense, and operating a motor vehicle after his license

had been suspended as a result of a prior OUI conviction.[1]  On appeal, the defendant claims that the judge erred by allowing in evidence unredacted records of the registry of motor vehicles (RMV), which contained multiple references to his refusal to submit to a chemical test.[2]  He also contends that the evidence was insufficient to prove that he had notice his license had been suspended.

We conclude that the failure to redact the RMV records was error and requires us to reverse the judgment on the charge of OUI, third offense.  We also conclude that the Commonwealth failed to prove notice to the defendant of his license suspension.  Consequently, judgment must enter for the defendant on the charge of operating a motor vehicle after suspension.[3]

---

[1] An additional charge of reckless operation of a motor vehicle was dismissed prior to trial.

[2] The defendant also claims that testimony describing his alleged refusal to perform the "one-leg stand" field sobriety assessment constituted improper refusal evidence.  The defendant did not object to the testimony, and therefore, the trial judge did not determine whether the defendant was unwilling to perform the test or, instead, indicated that he was not capable of performing the test.  See Commonwealth v. Brown, 83 Mass. App. Ct. 772, 778-779 (2013).  We express no view on the admissibility of the challenged testimony and presume the question will be resolved by the judge at any retrial.

[3] Given our conclusion, it is not necessary to address the defendant's additional claim that the judge erred by not giving an instruction informing the jury that evidence of the defendant's prior OUI conviction could be used only to determine whether the Commonwealth had proved the reason for the

Background. 1. Facts. On August 28, 2015, at about 6:45 P.M., Officer Steven Launie of the Revere police department was stopped in traffic on the American Legion Highway in Revere. The defendant's vehicle, a gray Toyota Camry, was in front of the officer. After a few minutes, the defendant pulled out of the lane of traffic onto the sidewalk and drove approximately 200 feet. Officer Launie activated his emergency lights and followed the defendant on the sidewalk, after which the defendant turned into the parking lot of a liquor store, where he parked without incident. Officer Launie parked behind the Camry, got out of his cruiser, approached the defendant's vehicle, and knocked on the driver's side window. The defendant initially held up his hand indicating that the officer should wait. Officer Launie knocked again and told the defendant to roll down the window. The defendant did not follow the officer's instruction. Instead, he opened the vehicle door. Officer Launie instructed him to close the door, and to remain in the automobile and roll down the window. The defendant complied, and Officer Launie requested his license and registration. The defendant produced a Massachusetts identification card and stated that his girl friend, who owned

defendant's license suspension. See Commonwealth v. Beaulieu, 79 Mass. App. Ct. 100, 102-103 (2011).

the vehicle, had his driver's license. He could not find the vehicle's registration, despite emptying the glove compartment in an effort to locate it. During this exchange, Officer Launie smelled the odor of alcohol and noticed that the defendant's movements were slow. After the defendant removed his sunglasses, the officer further observed that his eyes appeared glassy and bloodshot.

Suspecting that the defendant had been driving while under the influence of alcohol, Officer Launie decided to assess his sobriety and asked him to step out of the vehicle and perform certain tasks starting with the "one-leg stand" test. The defendant said that he would not be able to perform the task because he was not strong enough, and in fact, he performed poorly. Next, the defendant was not able to walk nine steps in a straight line and turn around. At this point, Officer Launie formed the opinion that the defendant was under the influence of alcohol and placed him under arrest. The defendant was transported to the police station by another officer, who had arrived on the scene to provide backup support.

The defendant did not testify at trial. His defense, developed through cross-examination and argument, was that his ability to drive was not impaired. He asserted, through counsel, that he drove on the sidewalk to avoid the traffic and that the sidewalk was wide enough for vehicles. He also claimed

that vehicles often parked on that sidewalk and introduced evidence -- two photographs -- to corroborate his claim. Lastly, he argued that the Commonwealth failed to prove that on August 28, 2015, he knew his license had been suspended.

2. The docket sheet and RMV records. At trial, the prosecutor introduced a certified copy of a criminal docket sheet showing that the defendant had pleaded guilty to OUI in the Peabody Division of the District Court Department approximately seven months earlier on January 13, 2015.[4] According to the docket, the defendant's license was suspended for two years from the date of the plea.[5] Thereafter, the prosecutor introduced a copy of the defendant's RMV record, certified as of October 13, 2015. The exhibit consisted of fifteen pages. The first page contained the defendant's identifying information, including his photograph, name, address, date of birth, social security number, and driver's license number. The second page set forth the defendant's

_____

[4] Although the issue has not been raised on appeal, we note that the docket sheet was only partially redacted. The first page of the exhibit contains handwritten notations reflecting a violation of probation (denoted "VOP") on September 2, 2015. We presume that further redaction will be required at any retrial. See Commonwealth v. Crayton, 470 Mass. 228, 249 n.27 (2014).

[5] In the box labelled "Sentence or other disposition" were the following handwritten comments: "60 days H/C ss 2yr 1-12-17," "2 yr loss of license," and "24Q Evaluation."

historical license information, including changes of address, and on the third page, the registrar certified that the documents were true copies, and that there had been no subsequent reinstatement of the defendant's license. The following six pages were copies of what appeared to be computer generated letters addressed to the defendant at addresses associated with his license. One of the letters, dated August 31, 2015 -- three days after the defendant's arrest in this case -- stated, "You are hereby notified that effective 08/28/15, your license/right to operate a motor vehicle is suspended for [three] years for CHEM TEST REFUSAL, pursuant to [G. L. c. 90, § 24 (1) (f) (1)]." The letter specified that the "CHEM TEST REFUSAL," described as an "offense," occurred on August 28, 2015, in Revere (the date and location of the OUI offense at issue here). The letter informed the defendant of his right to a "Chemical Test Refusal" hearing within fifteen days of his arrest and set forth information about the location and timing of such hearings. Of the remaining five letters, three concerned the revocation or suspension of the defendant's license on prior occasions for a "CHEM TEST REFUSAL" on October

30, 2014, in Lynnfield,[6] and a conviction of OUI on January 13, 2015.[7,8]

The remainder of the exhibit consisted of two copies of a computer printout of the defendant's three-page driving history. The printout contained the defendant's name, address, date of birth, and license number, followed by a list of entries, spanning twenty-two years, entitled "A COMPLETE LIST OF ALL OFFENSES AND ACTIONS ON FILE." The entries reflected that the defendant had committed numerous violations including, among other things, speeding, leaving the scene of property damage,

---

[6] The letter dated October 31, 2014, stated, "You are hereby notified that effective 10/30/14, your license/right to operate a motor vehicle is suspended for 180 days for CHEM TEST REFUSAL" on October 30, 2014, in Lynnfield. This letter, like the one dated August 31, 2015, informed the defendant of his right to a hearing to contest the suspension.

[7] The letter dated January 14, 2015, stated, "You are hereby notified that effective 01/24/15, your license/right to operate a motor vehicle is revoked for an additional 1 year for DWI LIQUOR." The letter included a notation that the defendant's license was already under suspension due to his "CHEM TEST REFUSAL" on October 30, 2014. A virtually identical letter dated January 21, 2015, extended the revocation, effective April 28, 2015.

[8] In addition, in letters dated September 2 and September 3, 2015, respectively (after the incident at issue here), the defendant was informed first that his license would be suspended (effective ninety days from the date of the letter) for "an indefinite period" as a result of an outstanding default or arrest warrant, and then that the pending license suspension was removed because the warrant had been cleared. See note 4, supra.

and seat belt and lane violations.  Two entries were related to the defendant's refusal to submit to a chemical test on October 30, 2014, and August 28, 2015, and specify that the defendant's driver's license had been suspended due to his "CHEM TEST REFUSAL" on both dates.

Discussion.  1.  Refusal evidence.  The defendant argues that evidence of his refusal to submit to a "CHEM TEST" violated his right against self-incrimination under art. 12 of the Massachusetts Declaration of Rights.  Because the defendant did not object to the admission of the RMV records, our review is limited to determining whether an error occurred and, if so, whether the error resulted in a substantial risk of a miscarriage of justice.  See Commonwealth v. Beaulieu, 79 Mass. App. Ct. 100, 103 (2011).

"In Massachusetts it is settled that at a criminal trial, evidence that the defendant refused to consent to a blood test or analysis of breath to detect alcohol is not admissible." Commonwealth v. Ranieri, 65 Mass. App. Ct. 366, 370-371 (2006), citing Commonwealth v. Zevitas, 418 Mass. 677, 681-684 (1994); Opinion of the Justices, 412 Mass. 1201, 1210-1211 (1992). "Underlying the reasoning in this line of cases is the proposition that refusal evidence is testimonial in nature and that its admission violates the privilege against self-incrimination under the Declaration of Rights of the

Massachusetts Constitution." Ranieri, supra at 371. See Commonwealth v. AdonSoto, 475 Mass. 497, 500 (2016).

The Commonwealth argues there was no reversible error for two reasons. First, the Commonwealth asserts that, because the prosecutor did not draw the jurors' attention to the various notations and entries in the RMV records that reflected the defendant's refusal to submit to a chemical test, the defendant was not harmed. This assertion is not supported by the record. The prosecutor referred to the documents at issue during her opening statement and relied upon them during her closing argument.[9] More fundamentally, it matters not whether the prosecutor referred to the documents. We expect that jurors will review documents that are admitted in evidence without qualification, and we do not condone the notion that juries will

_____

[9] In her opening statement, the prosecutor stated that the booking officer, Sergeant David Pressley, would "provide [the jury with] information that connects the dots between the series of paperwork that [the Commonwealth] will be admitting as exhibits. He will be providing pieces of that puzzle that . . . will then connect the defendant to the paperwork documenting the fact that that was the reason why his license was suspended." Later, in her closing argument, the prosecutor referred to individual pages of the exhibits, including the RMV letters, and stated that the documents "explain why [the defendant's] license is suspended." While the prosecutor likely was attempting to draw the jury's attention to the defendant's prior OUI conviction as the basis for the license suspension, as we have noted, the exhibits also indicate that the defendant's license was suspended for his refusal to submit to a chemical test.

consider only information to which they are specifically directed.

Second, the Commonwealth claims that, even if the jury did review the records, the jury would not have understood the meaning of the words "CHEM TEST" or "CHEM TEST REFUSAL." We reject this assertion. Almost two decades ago, we observed that "there is widespread public information and common knowledge about breathalyzer testing." Commonwealth v. Downs, 53 Mass. App. Ct. 195, 199 (2001). Presumably, the public's knowledge of such testing has not declined. In any event, we have no difficulty concluding that jurors are capable of understanding that the term "CHEM TEST" refers to a breathalyzer or blood test.

The inclusion of documents that contain references to the defendant's refusal to submit to a chemical test, as here, implicates the same concerns that the Supreme Judicial Court addressed in Opinion of the Justices, 412 Mass. at 1209-1211. Specifically, the notations referring to the defendant's "CHEM TEST REFUSAL" on August 28, 2015, could lead the jury to speculate that the defendant refused to submit to testing because he believed or suspected that he had had too much to drink. Speculation of this nature could lead to "distinct prejudice to a defendant." Downs, 53 Mass. App. Ct. at 199. The admission of the RMV records without redaction of, at a

minimum, all references to the defendant's refusals to submit to a chemical test was, therefore, error.[10]

We now turn to the question whether the error created a substantial risk of a miscarriage of justice. In our review, we consider four factors: "[(1)] the strength of the Commonwealth's case[; (2)] the nature of the error[; (3)] the significance of the error in the context of the trial[;] and [(4)] the possibility that the absence of an objection was the result of a reasonable tactical decision" (citation omitted). Commonwealth v. Bolling, 462 Mass. 440, 452 (2012).

The first factor, the strength of the Commonwealth's case, presents a close question. "Because the defendant was tried solely on a theory of impaired operation,[11] the Commonwealth was required to prove beyond a reasonable doubt that alcohol diminished the defendant's ability to safely operate a motor vehicle." Commonwealth v. Gibson, 82 Mass. App. Ct. 834, 837 (2012). Although the defendant clearly exhibited signs of intoxication, and evidence that he drove on a sidewalk was

---

[10] The defendant's challenge to the RMV records is based only on the improper references to his refusals to submit to a chemical test. However, at retrial, we anticipate that further redaction will be necessary. See note 4, supra.

[11] "As opposed to a per se violation. See G. L. c. 90, § 24(1)(a)(1)." Commonwealth v. Gibson, 82 Mass. App. Ct. 834, 837 n.3 (2012).

sufficient to prove impaired operation, the evidence was not overwhelming. The defendant essentially was stopped for taking a shortcut along the sidewalk to avoid traffic. See id. (defendant was stopped "for an essentially technical violation: running a red light after safely stopping and looking both ways"). Furthermore, there was evidence that the sidewalk was wide enough to permit the passage of motor vehicles, and the presence of parked vehicles on the sidewalk, as depicted in the photographs introduced by trial counsel, permitted the inference that the sidewalk was used by drivers as well as pedestrians. Moreover, Officer Launie testified that he did not observe any impairment in the defendant's driving as the officer activated his emergency lights and followed the defendant as he drove down the sidewalk and into the parking lot.

In regard to the second and third factors, as we observed in Gibson, supra at 838, "the error . . . is constitutional in nature, and is one that our courts have deemed prejudicial." We therefore consider the error to be a serious one. Lastly, as to the fourth factor, there is no possibility that the absence of an objection was due to anything but inadvertence. "In sum, . . . we 'have a serious doubt whether the result of the trial might have been different had the error not been made.'" Id., quoting Commonwealth v. LeFave, 430 Mass. 169, 174 (1999).

2.  Sufficiency of the evidence.  In order to obtain a conviction on the charge of operating a motor vehicle after his license had been suspended for a prior OUI, the Commonwealth was required to prove, beyond a reasonable doubt, "(1) that the defendant operated a motor vehicle; (2) that at the time of that operation the defendant's license was revoked or suspended; (3) that the license suspension or revocation was pursuant to a violation of one of the specified statutory sections (including [OUI] in violation of G. L. c. 90, § 24 [1] [a]); and (4) that the defendant was notified that his license had been suspended or revoked" (citation omitted).  Commonwealth v. Oyewole, 470 Mass. 1015, 1016 (2014).  The defendant concedes that the evidence was sufficient to establish the first three elements.  As to the fourth element, however, the defendant contends that the Commonwealth failed to satisfy its burden of proof.

The element of notice can be proved by evidence showing that the defendant had actual (or constructive) knowledge of the suspension.  See Commonwealth v. Deramo, 436 Mass. 40, 51-52 (2002) (defendant's actual knowledge of license revocation was proved by own admission); Commonwealth v. Norman, 87 Mass. App. Ct. 344, 345 (2015) (defendant's admission at time of stop that he did not have license, coupled with evidence that RMV had mailed notice of suspension to defendant's address, deemed sufficient).  Or, as is more often the case, notice may be

proved by proof of proper mailing of a notice of suspension by the RMV.  See Deramo, 436 Mass. at 50-51, and cases cited.  The Commonwealth need not prove that the defendant in fact received the notice.  Rather, proof that the RMV properly mailed a notice is sufficient.  See Commonwealth v. Koney, 421 Mass. 295, 303-304 (1995), citing Commonwealth v. Crosscup, 369 Mass. 228, 239 (1975) (proper mailing is prima facie evidence of receipt).

The Commonwealth argues that the evidence establishes the defendant's actual knowledge that his license was suspended because (1) he did not produce a license when asked to do so by Officer Launie, and offered no reason why his girl friend would have his license; and (2) the docket sheet of his January, 2015, guilty plea indicates a two-year loss of license, and the multiple RMV documents showing his license suspension also contain accurate identifying information about the defendant. Even viewed in the light most favorable to the Commonwealth, these facts are not sufficient.  While it is true that the defendant did not produce a license, he made no admissions. Contrast Deramo, 436 Mass. at 51-52; Norman, 87 Mass. App. Ct. at 345-346.  Furthermore, given the decision of the Supreme Judicial Court in Oyewole, 470 Mass. at 1016, we cannot conclude that the docket sheet from the defendant's guilty plea to OUI in January of 2015 is sufficient to establish that the defendant knew his license was suspended when he was stopped seven months

later in August.  Here, as in Oyewole, the docket sheet permits an inference that the defendant was present in court when his license was suspended, but the Commonwealth offered no evidence to show that the suspension was communicated to him.[12]  Contrast Commonwealth v. Wilson, 90 Mass. App. Ct. 166, 169-170 (2016) (notice of suspension could be inferred where defendant could not provide license when he was stopped by State trooper and evidence showed that, nineteen days before stop, defendant had admitted to sufficient facts on charge of operating motor vehicle after license had been suspended).

Lastly, there was no evidence to prove the RMV's proper mailing of any of the notices of suspension to the defendant. There was no testimony from an individual familiar with the RMV's procedures pertaining to notification by mail.  Contrast Norman, 87 Mass. App. Ct. at 345 (Commonwealth offered testimony of RMV branch manager concerning RMV's "system" of providing notice of license suspension); Commonwealth v. Lopes, 85 Mass. App. Ct. 341, 351 (2014) (RMV branch manager trained in "how an individual's license is suspended and how the RMV provides

---

[12] As the court observed in Oyewole, 470 Mass. at 1016 n.3, a transcript of the plea hearing might have established whether the defendant was informed of the suspension of his license. However, no transcript was offered in evidence at trial. Similarly, it would be a different matter if the docket reflected that the defendant acknowledged in court that his license was suspended.

notification to that individual by mail" testified that notice was sent to defendant's address by means of letter). Nor did the Commonwealth introduce a certification from the RMV that notice was sent to the defendant. See Deramo, 436 Mass. at 51. Compare Commonwealth v. Parenteau, 460 Mass. 1, 6 (2011). Contrast Commonwealth v. Royal, 89 Mass. App. Ct. 168, 174 (2016). The Commonwealth, therefore, did not meet its burden of proving every element of the offense beyond a reasonable doubt.

Conclusion. The judgment on the charge of OUI, third offense, is reversed, and the verdict is set aside. The judgment on the charge of operating a motor vehicle after license suspension as a result of a prior OUI conviction is reversed, the verdict is set aside, and judgment shall enter for the defendant on that charge.

So ordered.