## COMMONWEALTH *vs.* DANIEL C. DOWNS.

No. 99-P-1323.

Middlesex. January 9, 2001. - November 8, 2001.

Present: PERRETTA, KAPLAN, & GELINAS, JJ.

*Motor Vehicle,* Operating under the influence. *Alcoholic Liquors,* Motor vehicle. *Practice, Criminal,* Instructions to jury. *Constitutional Law,* Self-incrimination. *Evidence,* Breathalyzer test. *Intoxication.*

At the trial of a complaint charging the defendant with operating a motor vehicle while under the influence of intoxicating liquor, the judge's instructions to the jury, simply but forcefully instructing that they were not to think about or otherwise consider the fact that no evidence was offered concerning a breathalyzer test, did not violate the defendant's privilege against self-incrimination contained in art. 12 of the Declaration of Rights of the Massachusetts Constitution, where the judge's instructions made no mention either of the defendant's legal right to refuse to take the breathalyzer or the possible reasons for any refusal. [197-200]

Absent evidence in the record of a criminal case that the Commonwealth failed to provide the defendant with a police officer's report concerning his observations of the defendant during the booking process, there was no error in the trial judge's denial of the defendant's motion to exclude the officer's testimony or, in the alternative, to declare a mistrial; nor did the judge err in finding that the defendant had been convicted previously of the same offense, where not only was a copy of the defendant's prior conviction introduced in evidence, but the arresting officer on the prior offense testified as to all the facts necessary to support a conviction of the defendant as a subsequent offender. [200]

COMPLAINT received and sworn to in the Concord Division of the District Court Department on September 8, 1998.

The case was tried before *Paul L. McGill,* J.

*Allison J. Koury* for the defendant.

*Thomas D. Ralph,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. Found guilty by a District Court jury on a complaint charging him with operating a motor vehicle while

under the influence of intoxicating beverages, as well as by the trial judge on a second-offense complaint, the defendant appeals and claims that the trial judge's jury instruction concerning the absence of breathalyzer evidence violated his privilege against self-incrimination contained in art. 12 of the Declaration of Rights of the Massachusetts Constitution. We affirm the convictions.

1. *Background.* On September 6, 1998, at about 3:25 A.M., State Trooper Wayne Gerhardt was on patrol and driving west on Route 2 in Lincoln. He saw a black Nissan automobile partially pulled over to the side of the road. The headlights were on, and the car was emitting exhaust from its tail pipe. Gerhardt pulled over, got out of his vehicle, walked over to the Nissan, and awakened the driver, the defendant, by knocking on the window four times. While the defendant was attempting to produce his license and registration, Gerhardt detected a strong odor of alcohol and observed that the defendant's eyes were glassy and bloodshot and his speech was slurred. In response to Gerhardt's inquiries, the defendant stated that he had consumed "some" alcohol at a "strip joint" in Boston, that he believed he was somewhere on the North Shore, and that it was about 11:30 P.M.

When the defendant got out of his car — without difficulty — to perform field sobriety tests, he retrieved his license from a back pocket of his trousers. The results of the field tests were mixed, that is, although the defendant missed the heel-to-toe portion of the test, he was able to keep his balance, make a pivot turn, and recite the alphabet, albeit in speech described by Gerhardt as slurred. The defendant was unable to stand on one foot and count to thirty: he hopped about wildly, almost falling over. It was at this point that Gerhardt arrested the defendant, cuffed his hands behind his back, placed him in his cruiser, and brought him to the State police barracks in Concord. Throughout this entire time, the defendant was able to walk without swaying or wobbling.

Trooper Stephen J. Cunningham was the desk officer on duty at the time of the defendant's arrest. He testified that during the booking process, he noticed that the defendant's eyes were glassy and bloodshot, that he gave off an odor of alcohol, that

he was shouting and throwing his sweatshirt about, that he was having difficulty in maintaining his balance, and that his speech was slurred.

No evidence was offered concerning any breathalyzer or blood testing results.

2. *The jury instruction.* In *Opinion of the Justices*, 412 Mass. 1201 (1992), the court opined that legislation proposing to allow evidence of a defendant's failure or refusal to submit to a breathalyzer test would have the effect of securing from him incriminating testimonial evidence, that is, that he refused to submit to testing because he believed the testing results would be unfavorable to him. *Id.* at 1209.

In *Commonwealth* v. *Zevitas*, 418 Mass. 677 (1994), the court relied upon that previously expressed opinion to conclude that the jury instruction mandated by G. L. c. 90, § 24(1)(*e*), admonishing against speculation and inferences based upon a lack of evidence of a blood alcohol test, violated a defendant's privilege against self-incrimination as guaranteed by art. 12 of the Declaration of Rights of the Massachusetts Constitution. The mandated instruction considered, *id.* at 681, reads in part:

> "When there is no evidence presented at a civil or criminal proceeding of the percentage, by weight, of alcohol in the defendant's blood, the presiding judge at a trial before a jury shall include in his instructions to the jury a statement of an arresting officer's responsibilities upon arrest of a person suspected to be operating a motor vehicle under the influence of alcohol and a statement: that a blood alcohol test may only be administered with a person's consent; that a person has a legal right to take or not take such a test; that there may be a number of reasons why a person would not take such a test; that there may be a number of reasons why such a test was not administered; that there shall be no speculation as to the reason for the absence of a test and no inference can be drawn from the fact that there was no evidence of a blood alcohol test; and that a finding of guilty or not guilty must be based solely on the evidence that was presented in the case."

The court set out in detail the reasons for its conclusion that the instruction required by the statute infringed upon a

defendant's privilege against self-incrimination. As explained in *Commonwealth* v. *Zevitas*, 418 Mass. at 683-684:

> "It is true that the use of appropriate limiting instructions usually renders any error in the introduction of prejudicial evidence harmless, *Commonwealth* v. *Roberts*, 378 Mass. 116, 127 (1979), because '[w]e presume, as we must, that a jury understands and follows limiting instructions.' *Commonwealth* v. *Jackson*, 384 Mass. 572, 579 (1981). However, here we are not concerned with the question whether erroneously admitted evidence may be rendered harmless by appropriate instructions. Here we are confronted with an erroneous instruction (although legislatively mandated) and we cannot fairly conclude that *the judge's admonition against speculation and inferences based on the information he had given the jury* dissuaded the jury from concluding that the defendant had refused to submit to a blood alcohol test and using that evidence against him in violation of his art. 12 rights" (emphasis supplied).

See *Commonwealth* v. *D'Agostino*, 421 Mass. 281, 287 (1995); *Commonwealth* v. *Koney*, 421 Mass. 295, 300-301 (1995).

In the instant case, the trial judge advised counsel during a lobby conference that he intended to instruct the jury that:

> "You are not to mention or consider in anyway whatsoever, either for or against either side, that there is no evidence of a breathalyzer. Do not consider that in any way. Do not mention it. And put it completely out of your mind."[1]

The defendant lodged an objection to the instruction during the conference and after it was delivered to the jury.

In order to understand the defendant's argument on appeal, we think it important to note that he made no written or oral request for an alternative instruction. Further, the defendant's

---

[1] The trial judge gave his reasons for overruling the defendant's timely objections during the lobby conference and in a memorandum. As explained by him, jurors had made it clear to him in other cases through questions during their deliberations or after their verdicts that they had engaged in speculation about the absence of breathalyzer evidence. He formulated the instruction in issue as "a statement of law which compels the jury not to concern themselves with extraneous speculation or conjecture."

counsel on appeal has not offered any suggestion as to what instruction could and should have been delivered in place of the one now challenged. Evidently, the defendant's position at trial and on appeal is that *any* instruction containing *any* mention of the breathalyzer violates his constitutionally guaranteed right against self-incrimination.

*Opinion of the Justices*, 412 Mass. 1201, and *Commonwealth v. Zevitas*, 418 Mass. 677, both stand for the proposition that, in determining a defendant's guilt or lack thereof on charges involving his state of intoxication, a jury cannot give any consideration to the possible reasons for the absence of evidence of breathalyzer test results. To inform a jury of the possible reasons for the absence of breathalyzer test results is to invite speculation that the lack of such evidence was due to a defendant's refusal to submit to testing because he believed or suspected that he had had too much to drink. There is nothing in either authority or their progeny that forbids a trial judge from making any mention of the breathalyzer test in jury instructions.

We cannot close our eyes to the fact that there is widespread public information and common knowledge about breathalyzer testing. To instruct the jury without any reference whatsoever to breathalyzer testing could well lead to distinct prejudice to a defendant. That is to say, without some form of a limiting instruction concerning the breathalyzer, a jury very well could rely upon their common knowledge and engage in the same speculation invited by the erroneous instruction required by G. L. c. 90, § 24(1)(e).[2] It was, therefore, not incorrect for the trial judge to conclude that he should give some instruction to the jury about the absence of evidence of breathalyzer test results.

Here the jury were simply but forcefully instructed that they were not to think about or otherwise consider the fact that no evidence was offered concerning the breathalyzer. Unlike the impermissible instruction mandated by § 24(1)(e), the limiting instruction delivered in the instant case made no mention either

[2]The absence of some form of an instruction could also cause conjecture or speculation resulting in unfairness to the Commonwealth, e.g., the police did not offer the breathalyzer to a defendant or perhaps the breathalyzer was not in working order.

of a defendant's legal right to refuse to take the breathalyzer or the possible reasons for any refusal. It is this difference which leads us to conclude that the instruction did not violate the defendant's art. 12 rights.

3. *Other issues.* There are two remaining claims, neither of which warrants lengthy discussion. Because there is nothing in the record before us that shows that the Commonwealth failed to provide the defendant with Cunningham's report concerning his observations of the defendant during the booking process, we need say no more than that we see no error in the trial judge's denial of the defendant's motion to exclude Cunningham's testimony or, in the alternative, to declare a mistrial.

Nor need we say much about the defendant's claim that because the Commonwealth failed to produce certified copies of the defendant's prior conviction under G. L. c. 90, § 24, the trial judge erred in finding that he had been convicted previously of operating a motor vehicle while under the influence of intoxicating beverages. As we review the record, it shows not only that a copy of the defendant's prior conviction was introduced in evidence, but also that the arresting officer on the prior offense testified as to all the facts necessary to support a conviction of the defendant as a subsequent offender.

*Judgments affirmed.*