The defendant, Alan B. Wood, appeals from the judgment after his conviction of operating a motor vehicle while under the influence of alcohol, third offense, G. L. c. 90, § 24(1)(a )(1), raising numerous arguments, none of which is meritorious. We affirm.
Background. The jury could have found the following facts. On the night of June 21-22, 2014, Massachusetts State troopers conducted a "sobriety checkpoint" on Beach Road in the town of Salisbury. At approximately 1:00 A.M., Trooper Barry Nangle stopped and approached a motor vehicle operated by the defendant. Nangle noticed that the defendant's eyes were "bloodshot and glassy," and Nangle could "smell the odor of an alcoholic beverage coming from [the defendant's] person." When asked if he had been drinking alcohol, the defendant admitted that he had had "several beers" at a barbeque. Nangle then directed the defendant to turn into the "pit" for further assessment. There two other troopers detected a "pretty strong" odor of alcohol from the defendant, his "red," "glassy," and bloodshot eyes, and his slurred speech. The defendant, again admitting that he had been drinking, stated that he had three "Bud Light drafts" in "about five hours." Based on their observations, including the defendant's unsatisfactory performance on a number of field sobriety tests, the troopers formed the opinion that the defendant was intoxicated and placed him under arrest.
Discussion. 1. Motion to suppress. For the first time on appeal, the defendant challenges the constitutionality of the police's sobriety checkpoint on the basis that the troopers conducted it in a parking lot owned by a church. The defendant claims the location violated the church's private property interests because the Commonwealth offered no proof that it had authority to use the property for this purpose. As the defendant did not raise or argue the issue in his motion to suppress below, we review only to determine whether an error causing a substantial risk of a miscarriage of justice occurred. See Commonwealth v. Scala, 380 Mass. 500, 510-511 (1980). It did not.
There was no error in the denial of the defendant's motion to suppress. The defendant is without standing to challenge the use of property in which he has no ownership interest. See Cornell-Andrews Smelting Co. v. Boston & Providence R.R. Corp., 209 Mass. 298, 305 (1911). He also lacks standing to assert the rights of unspecified "people of other religious faiths and/or atheists" who "may object to the compelled entry upon the religious property of another faith." See Society of Jesus of New England v. Commonwealth, 441 Mass. 662, 669 (2004). As to the other challenges to the checkpoint location, each lacks citation to any meaningful authority, and thus does not rise to the level of acceptable appellate argument. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975).
2. Sufficiency of the evidence. When reviewing the sufficiency of the evidence, we determine "whether the evidence, considered in the light most favorable to the Commonwealth, was sufficient to satisfy a rational trier of fact of the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Coonan, 428 Mass. 823, 828 (1999). See Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). The Commonwealth was required to prove that the defendant (1) operated a motor vehicle (2) upon a public way (3) while under the influence of alcohol. Luk v. Commonwealth, 421 Mass. 415, 430 (1995). See G. L. c. 90, § 24 (1)(a )(1). To satisfy its burden of proof as to the defendant's intoxication,[2] the Commonwealth had to prove that "the defendant's consumption of alcohol diminished [his] ability to operate a motor vehicle safely." Commonwealth v. Connolly, 394 Mass. 169, 173 (1985). In making this determination, several factors are taken into account, such as the odor of alcohol coming from the defendant, his appearance, his performance on field sobriety tests, and the opinion testimony of police officers who observed the defendant. See Commonwealth v. Sudderth, 37 Mass. App. Ct. 317, 321 (1994).
We conclude that the evidence of the defendant's intoxication was sufficient to satisfy the Latimore standard. The defendant twice admitted consuming alcohol earlier that evening. His eyes were bloodshot, red, and glassy, and his speech was slurred. He emitted a strong odor of alcohol when he spoke. In addition, the defendant was unable to complete any of the field sobriety tests. To the extent the defendant points to evidence in the troopers' testimony that he alleges shows his sobriety, it was for the jury to decide how much weight to place on the evidence. See Commonwealth v. Martino, 412 Mass. 267, 272 (1992).
3. Evidence relating to breathalyzer procedures. The defendant contends that a trooper's testimony, "No, he wasn't in a holding cell. That's when we start the breathalyzer test procedures," violated G. L. c. 90, § 24(1)(e ), which precludes the introduction of evidence that the defendant either failed or refused to consent to such test.[3] While we agree the trooper should not have made the statement, we conclude that it did not so prejudice the defendant as to require a reversal of his conviction.
Here, it appears that the trooper's reference to breathalyzer procedures was inadvertent rather than a purposeful effort to circumvent the mandate of G. L. c. 90, § 24(1)(e ). Apart from this isolated reference, there was no further mention of breathalyzers during the remainder of the trial. In addition, the judge gave a forceful instruction that the jurors "are not to think about or otherwise consider the fact that no evidence was offered concerning a breathalyzer," and that they should "not consider it in any way and do not mention it in your deliberations."[4] The "jury are presumed" to have followed this instruction. Commonwealth v. Roberts, 433 Mass. 45, 53 (2000). Thus, we conclude the defendant was not unduly prejudiced by the trooper's testimony.[5] See Commonwealth v. Conroy, 396 Mass. 266, 268-269 (1985) (declining to reverse defendant's conviction where officer testified only once that defendant was afforded opportunity to take breathalyzer test, with no mention that he refused).
4. Abbreviated jury instructions in second trial. Immediately after the jury returned their verdict of guilty for operating while under the influence, the judge proceeded to a separate trial, before the same jury, on the charge that the defendant had previously been convicted of a "like offense" at least once. See G. L. c. 90, § 24(1)(a )(1). See also G. L. c. 278, § 11A. When the judge charged the jury at the second trial, he gave abbreviated instructions, referring to and incorporating the instructions he had given the jurors a few hours earlier.[6] As there was no objection at trial, we review for a substantial risk of miscarriage of justice.
We are satisfied that the judge's condensed instructions did not create a substantial risk of a miscarriage of justice. This case is factually identical to Commonwealth v. Gonzalez, 47 Mass. App. Ct. 255 (1999), where the court held that, because "[t]he judge touched on the elements the Commonwealth was bound to prove," it was "unlikely the judge would have accomplished anything through full-dress repetition of the instructions." Id. at 260-261. We conclude likewise.
5. Instruction on New Hampshire conviction. The defendant next contends that the trial judge failed to instruct the jury that the New Hampshire offense of "driving while under the influence of intoxicating liquor" is a "like offense" to the Massachusetts crime of operating while under the influence.[7] Because there was no request for such an instruction, we review only to determine if there was an error and, if so, whether it created a substantial risk of a miscarriage of justice. Commonwealth v. Olivo, 58 Mass. App. Ct. 368, 373 (2003). There was no error.
The defense at the second trial was that the defendant was not the same person convicted of the New Hampshire offense. Instructing the jury that the New Hampshire conviction was a like offense to the Massachusetts conviction would not have furthered that defense. In fact, had such an instruction been requested, the judge would have had to instruct the jury that, as a matter of law, the New Hampshire offense was a like offense. See Commonwealth v. Flaherty, 61 Mass. App. Ct. 776, 777-781 (2004). As such, the absence of an instruction likely inured to the defendant's benefit, since a like offense instruction could only have removed the issue from the jury's consideration. There was no risk of a miscarriage of justice on this basis.
6. Answer to jury question. During deliberations the jury sent a note to the judge with three questions, one of which was: "why does the New Hampshire 2008 conviction say that it's the first conviction?" The judge answered the question by telling the jury that it was immaterial what number conviction it is, so long as they find that it is a conviction. There was no error. "The proper response to a jury question must remain within the discretion of the trial judge, who has observed the evidence and the jury firsthand and can tailor supplemental instructions accordingly." Commonwealth v. Nelson, 468 Mass. 1, 16 (2014), quoting from Commonwealth v. Monteagudo, 427 Mass. 484, 488 (1998). The judge's response provided the jury with the "relevant legal framework" to assist jurors in their consideration of the evidence. Commonwealth v. Nelson, supra. Furthermore, the judge's response did not preclude the jury from concluding that the defendant was not the person convicted of the New Hampshire offense. Thus, the judge properly exercised his discretion in responding to the question as he did.
Judgment affirmed.

The defendant stipulated to the first two elements at trial.

Both the defendant and the Commonwealth objected to the trooper's testimony. At sidebar, defense counsel moved for a mistrial, which motion was denied by the judge. The judge then stated that he would strike the trooper's testimony and issue a jury instruction pursuant to Commonwealth v. Downs, 53 Mass. App. Ct. 195, 198 (2001). While it appears that the testimony was not stricken, the judge did issue a curative instruction when charging the jury that amounted to the functional equivalent of striking the testimony.

The defendant takes issue with the phrasing of the judge's instruction, specifically, the omission of the phrase "put [the mention of breathalyzers] completely out of your mind." See Commonwealth v. Downs, 53 Mass. App. Ct. 195, 198 (2001). This distinction is semantic; the instruction given by the judge in this case carried no meaningful difference from the instruction given in Downs.

The Supreme Judicial Court recently held in Commonwealth v. Wolfe, 478 Mass. 142 (2017), that going forward, "the decision whether the jury receive [a Downs ] instruction should rest with the defendant." Id. at 148 n.10. This prospective holding does not affect the outcome of this case. Moreover the defendant did not argue against the judge's statement that he would give a Downs instruction, and did not object when the instruction was given.

The jurors had begun deliberations on the first case at 12:30 P . M . and on the second case at 4:08 P .M.

As the defendant notes, the model jury instruction on this offense contain a supplemental instruction for out-of-State offenses, which states that "as a matter of law, that the offense known as ________ in the state of ________ is a like offense to the offense of [operating while under the influence of liquor] here in Massachusetts." Instruction 2.540 of the Criminal Model Jury Instructions for Use in the District Court (2011).