NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us.

22-P-551                                      Appeals Court

COMMONWEALTH  vs.  WADE C. DEROSIER.

No. 22-P-551.

Middlesex.     April 6, 2023. - October 27, 2023.

Present:  Rubin, Shin, & Englander, JJ.[1]


Motor Vehicle, Operating under the influence.  Alcoholic Liquors, Motor vehicle.  Evidence, Breathalyzer test, Videotape.  Practice, Criminal, Instructions to jury.


Complaint received and sworn to in the Lowell Division of the District Court Department on July 16, 2019.

The case was tried before Stacey J. Fortes-White, J.


Andrew Courossi for the defendant.
Chia Chi Lee, Assistant District Attorney, for the Commonwealth.

---

[1] This case was originally heard by a panel comprised of Justices Rubin, Englander, and Brennan.  After Justice Brennan recused himself, the case was submitted on the record and briefs to Justice Shin, who took part in the decision in accordance with Mass. R. A. P. 24 (a) & (b), as appearing in 481 Mass. 1654 (2009).

ENGLANDER, J.  A District Court jury found the defendant guilty of operating a motor vehicle under the influence of intoxicating liquor (OUI), G. L. c. 90, § 24 (1) (a) (1).[2]  On appeal, the defendant claims the trial judge erred (1) by admitting the video recording of his booking process (booking video), in which a breathalyzer machine was visible in the booking room, and (2) by giving an instruction regarding the lack of breathalyzer evidence, in response to a question from the jury.  We affirm.

Background.  We summarize the facts as the jury could have found them, reserving certain details for later discussion.  At approximately 3:15 A.M. on July 14, 2019, State police troopers[3] stopped the defendant's car for crossing over marked lanes while driving on Route 495 in Lowell.  When informed of the reason for the stop, the defendant stated that he was tired, but also acknowledged having consumed three beers about three hours earlier.  The troopers noticed that the defendant had bloodshot and glassy eyes, slightly slurred speech, and a strong odor of alcohol.

---

[2] The trial judge also found the defendant responsible for a civil marked lanes violation, G. L. c. 89, § 4A.

[3] Trooper Matthew Devito, in his first year with the State police, was accompanied by Trooper David Dumont, a seven-year State police veteran, who acted as a "trooper coach" for this arrest.

The troopers asked the defendant to exit the vehicle to perform three field sobriety tests.  When the defendant stepped out of the car, he was "a little unsteady on his feet."  Before the tests, the defendant stated that he was able to recite the English alphabet and had "some college" education.  He also told the troopers that he had a knee injury, and they noticed that the defendant had a brace on his right knee.  The defendant failed the nine-step walk and turn test because he did not take the steps heel to toe on all eighteen steps and made an improper pivot.  The defendant's performance on the one-leg stand test, which required him to raise one of his feet six inches off the ground for thirty seconds, was described by one trooper as "excellent."  The defendant failed the final test, reciting the alphabet from letters B to Y, by "[skipping] over multiple letters" and having to restart several times.  Both troopers concluded that the defendant was "drunk."  The defendant was arrested and transported to the State police barracks in Andover, where his booking was recorded by a video camera.

The defendant did not testify or offer any evidence. His theory of defense, presented through cross-examination and closing argument, was that he was tired as opposed to intoxicated, and that the Commonwealth did not prove its case beyond a reasonable doubt.

Prior to trial, the defendant moved, in limine, to exclude the booking video because the breathalyzer machine was visible in the booking room.  He argued that admission of the booking video would be unduly prejudicial because jurors might see the machine and consequently assume that he refused the test.[4]  The Commonwealth countered that the booking video was important evidence of "the defendant's condition after arrest and you also see him moving his injured knee and him walking, so it shows his injured knee would not have affected his ability to perform [field sobriety tests]."  The booking video could not be redacted so that the breathalyzer machine was not visible; notably, there were other machines visible on the booking desk and in the room.  The judge watched the booking video and concluded that "there is probative value to the video because . . . the jury will be able to see [the defendant] stretching his leg."  She determined that there was no "prejudice to the defendant" and noted that, if anything, the booking video was "more helpful to the defense" based on the defendant's appearance and demeanor in the booking video.  The judge

_____

[4] The defendant apparently took a breath test (defense counsel so stated); however, the Commonwealth did not seek to offer the result.  According to the prosecutor, "the machine was only certified two weeks after the [defendant's arrest], so the certification was out of date."

admitted the booking video into evidence over the defendant's objection.

During deliberations, the jury asked four questions, including "[w]as the standard breathalyzer test offered or refused?  The test equipment was visible in the booking room."[5] After consulting with defense counsel and the Commonwealth, the judge indicated that she intended to respond by reminding the jury to decide the facts solely based on the evidence at trial,[6] and asked defense counsel if he wanted an instruction pursuant to Commonwealth v. Downs, 53 Mass. App. Ct. 195, 198-199 (2001) (Downs instruction) on the absence of breathalyzer evidence. Although defense counsel acknowledged that "the Downs instruction is a normal course the way that the type of instruction that would be given," he instead requested a "unique instruction" that the "Commonwealth [was] not using

---

[5] The other three questions the jury asked, as read by the judge, were:
1. "[T]he state trooper indicated the defendant had three drinks. . . .  The defense attorney said, suggested, the defendant had three beers.  What was it?"
2. "Were any containers of alcoholic beverages found in the vehicle?"
3. "Given his knee injury, was he on medication?"

[6] The judge told the jury to imagine all the trial evidence in a box, that their verdict must be based on what was inside the box, and that they must avoid speculation, conjecture, or guesswork.

[b]reathalyzer tests at all during that period of time."[7]  The trial judge responded, "I don't think it's fair to say they weren't using it at that -- I don't know that that's the case." The judge indicated that the Downs instruction was "the appropriate instruction to give, and it's what we typically give.  If you're objecting to me giving that instruction and you want to craft something else for me to give then -- I'm happy to consider it."  The defendant did not suggest a different instruction nor object to the Downs instruction at that time. The judge delivered the Downs instruction as follows:

> "There is no evidence with regard to the [b]reathalyzer.
> You are not to mention it or consider in any way
> whatsoever, either for or against either side.  There is no
> evidence of [b]reathalyzer.  Do not consider it in any way.
> Do not mention it, and put it completely out of your mind."

After the jury were sent out to resume deliberations, the judge asked defense counsel whether he was satisfied with the instruction.  Defense counsel replied, "I'm not inclined to say that I'm satisfied with that one, but I would just ask you to note my concerns and I guess my objection for the record."

Discussion.  1.  Admission of the booking video.  We first address the defendant's contention that admission of the booking

---

[7] The period of presumptive exclusion of Draeger Alcotest 9510 breathalyzer results in OUI prosecutions ended April 18, 2019 – three months before the defendant's arrest.  See Commonwealth v. Hallinan, 491 Mass. 730, 738, 748 (2023).  See generally Commonwealth vs. Ananias, Mass. Dist. Ct., No. 142284 (Lowell Div. Jan. 9, 2019).

video was prejudicial error.  "Because the defendant objected to the evidentiary ruling below, we review the ruling for 'an abuse of discretion, which requires a demonstration that the judge made a clear error of judgment in weighing the factors relevant to the decision such that the decision falls outside the range of reasonable alternatives'" (quotation omitted).  Commonwealth v. Babcock, 100 Mass. App. Ct. 527, 528 (2021), quoting Commonwealth v. Driscoll, 91 Mass. App. Ct. 474, 476 (2017).  We discern no such error.

Evidence is relevant and admissible when it has some tendency to "make a consequential fact more or less probable than it would be without that evidence."  Commonwealth v. Moore, 480 Mass. 799, 808 (2018)., In a typical OUI case, a defendant's "driving performance, appearance, demeanor, execution of field sobriety tests, and conduct at booking" are relevant "proof of impaired operation." Commonwealth v. Hourican, 85 Mass. App. Ct. 408, 417 (2014).  A trial judge may exercise her discretion and exclude relevant evidence where its probative value is substantially outweighed by the danger of unfair prejudice. Commonwealth v. Crayton, 470 Mass. 228, 249 (2014).  However, "[b]y design, all evidence is meant to be prejudicial; it is only unfair prejudice which must be avoided."  Commonwealth v. Kindell, 84 Mass. App. Ct. 183, 188 (2013), quoting United States v. Rodriguez-Estrada, 877 F.2d 153, 156 (1st Cir. 1989).

"Evidence is unfairly prejudicial only if it has 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one'" (citations omitted). Id., quoting Carter v. Hewitt, 617 F.2d 961, 972 (3d Cir. 1980).

Here, the booking video was relevant to support (or to refute) the Commonwealth's contention that the defendant's inability to satisfactorily complete the walk and turn test stemmed from his intoxication rather than his knee injury. To the extent the judge anticipated this would be a contested issue at trial, her instincts were borne out by defense counsel's cross-examination of Trooper Devito, in which he asked whether "[the defendant] was having difficulty doing the pivot turn because of his knee brace." Here the booking video evidence of the defendant from shortly after the roadside tests were administered was highly relevant evidence of the defendant's ability to walk and of any limitations due to injury.

Furthermore, we agree with the trial judge's assessment that the probative value of the booking video was not substantially outweighed by any risk of unfair prejudice. Having reviewed the booking video, we note that there is nothing to indicate that one of the machines on the booking desk was a breathalyzer (it looks like a copier or fax machine). Although "there is widespread public information and common knowledge about breathalyzer testing," Commonwealth v. Cueva, 94 Mass.

App. Ct. 780, 785 (2019), quoting Downs, 53 Mass. App. Ct. at 199, the judge's implicit reasoning that the jury would not recognize the breathalyzer machine was not a "clear error of judgment." L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014), quoting Picciotto v. Continental Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008). The fact that the jury did recognize the breathalyzer machine in the booking video does not retroactively render the trial judge's decision to admit the video an abuse of discretion, especially when admission of the evidence was combined with limiting instructions, discussed infra. See Commonwealth v. Peno, 485 Mass. 378, 395-396 (2020). The judge did not abuse her discretion by admitting the booking video into evidence. See Commonwealth v. Fan, 490 Mass. 433, 443 (2019), quoting Commonwealth v. Sicari, 434 Mass. 732, 752 (2001), cert. denied, 534 U.S. 1142 (2002) ("In weighing the probative value of evidence against any prejudicial effect it might have on a jury, we afford trial judges great latitude and discretion").

2. Supplemental jury instruction regarding breathalyzer. The defendant also argues that it was prejudicial error for the judge to give the Downs instruction over his objection. In Commonwealth v. Wolfe, 478 Mass. 142, 149-150 (2017), the Supreme Judicial Court held, as an exercise of its superintendence power, that "the better practice is for a judge to refrain from giving a Downs-type instruction absent a request

by the defendant <u>or some rare set of facts that specifically</u> <u>directs the jury's attention to the absence of alcohol-test</u> <u>evidence</u>" (emphasis added). The <u>Wolfe</u> court's concern was that giving the <u>Downs</u> instruction could implicate the defendant's protection against self-incrimination under art. 12 of the Massachusetts Declaration of Rights by drawing the jury's attention to the lack of alcohol-test evidence, and thereby suggesting that the defendant may have refused a test or feared an unfavorable result. <u>Id</u>. at 145-146; <u>Commonwealth</u> v. <u>Moreno</u>, 102 Mass. App. Ct. 321, 327 (2023). See also <u>Opinion of the</u> <u>Justices</u>, 412 Mass. 1201, 1209, 1211 (1992) (refusal evidence may be used to show defendant feared failing alcohol test and thus held to violate privilege against self-incrimination under art. 12 of Massachusetts Declaration of Rights).

The direction of the <u>Wolfe</u> court was not absolute, however. It came with a caveat, and we can conceive of few circumstances that fall more squarely in the category of a "rare set of facts that specifically directs the jury's attention to the absence of alcohol-test evidence," <u>Wolfe</u>, 478 Mass. at 150, than where the jurors have noted the presence of a breathalyzer machine in a video exhibit, and asked a specific question about whether "the standard breathalyzer test" was "offered or refused." In unusual circumstances such as these, <u>Wolfe</u> left the question of

the proper instruction to the judge's discretion.[8]  The judge thus was not required by Wolfe to ignore the reality that here the breathalyzer issue was squarely in the minds of the jury, and that inasmuch as the booking video would necessarily remain with the jurors in the deliberation room, the breathalyzer question was not likely to leave their focus absent specific instruction.  The judge's determination that a Downs-type instruction was necessary in these circumstances was logical and sensible.

The defendant points to a footnote in Wolfe commenting that, in response to a jury question about the absence of alcohol test evidence, "it is the better practice to simply reiterate the general instruction not to speculate about matters not in evidence and, to the extent possible, refrain from reinforcing the jury's focus on items not in evidence by mentioning the lack of alcohol-test evidence."  Id. at 150 n.13.  The question from the jury in this case, however, was not just a general question about the lack of alcohol test evidence, but a specific question arising out of video evidence, which the jury

---

[8] At several points, the dissent overstates the holding of Wolfe, contending that a trial judge cannot give the Downs instruction unless defense counsel agrees.  See, e.g., dissent at 1 ("giving the Downs instruction . . . in the absence of a request from the defendant is reversible error").  The dissent's contention is manifestly at odds with the Wolfe court's carve-out for a "rare set of facts" -- facts which are present here.

saw and processed, that there was a breathalyzer machine in the room with the defendant.  Moreover, as we recognized in Moreno, "although the court in Wolfe stated that it is the better practice to respond to a jury question with a general instruction only, the court did not state that it is error to deliver the Downs instruction as well."  Moreno, 102 Mass. App. Ct. at 328.[9]

Under the circumstances, the judge did not commit error by exercising her discretion to forcefully respond to the jury's question with instructions that included the more specific Downs admonition "not to mention [the breathalyzer] or consider it in any way whatsoever, either for or against either side.  There is no evidence of a [b]reathalyzer.  Do not consider it in any way. Do not mention it, and put it completely out of your mind."

---

[9] We note that contrary to the defendant's (and the dissent's) assertions, it does not appear that the defendant properly objected to the Downs instruction.  As described above, when the judge proposed the Downs instruction, defense counsel asked for his own "unique" instruction instead.  The judge declined to give the defendant's proposed instruction (because she was not satisfied that it was accurate), and then again proposed Downs, stating "[i]f you're objecting to me giving that instruction and you want to craft something else for me to give the[m] -- I'm happy to consider it."  The defendant did not then object, and only asked that his objection be "note[d]" after the Downs instruction had been given and the jury had returned to deliberations.  In Wolfe, the court held that the error was in giving the Downs instruction, as part of the original charge, over the defendant's objection.  See Wolfe, 478 Mass. at 150. The record here is quite different, and for this reason as well we do not believe that it was error under Wolfe to give the instruction.

Judgment affirmed.

RUBIN, J., dissenting.  Although the court majority does not say so explicitly, giving the Downs instruction, see Commonwealth v. Downs, 53 Mass. App. Ct. 195, 198 (2001), in the absence of a request from the defendant is reversible error unless the Commonwealth can demonstrate no prejudice. Commonwealth v. Wolfe, 478 Mass. 142, 146 (2017) (because a Downs instruction may "unnecessarily introduce[] the specter of refusal evidence into the jury room and . . . [may] cause the jury specifically to focus on the absence of breathalyzer evidence," giving that instruction "over the defendant's objection . . . was error.").  "Animating the court's concern [in Wolfe] was that the Downs instruction could implicate the defendant's protection against self-incrimination under art. 12 of the Massachusetts Declaration of Rights because it draws the jury's attention to the lack of alcohol-test evidence, suggesting that the defendant may have refused a test or feared an unfavorable result." Commonwealth v. Moreno, 102 Mass. App. Ct. 321, 327 (2023).  This wasn't simply a matter of saying what "the better practice" is.  The Supreme Judicial Court in Wolfe, announcing a prospective rule, decided that, utilizing its supervisory power, it would codify the "better practice" into law, making it mandatory.  Wolfe, 478 Mass. at 149.

Thus, in spelling out what is required, it said that "as an exercise of our superintendence power, we conclude that, as a

matter of procedure, the better practice is for a judge to refrain from giving a Downs-type instruction absent a request by the defendant or some rare set of facts that specifically directs the jury's attention to the absence of alcohol-test evidence." Id. at 149-50. In the footnote at the end of that sentence, the court continued, "Further, when a jury ask a question about the absence of alcohol-test evidence, as occurred in the defendant's first trial, we think it is the better practice to simply reiterate the general instruction not to speculate about matters not in evidence and, to the extent possible, refrain from reinforcing the jury's focus on items not in evidence by mentioning the lack of alcohol-test evidence." Id. at 150. The reason defense counsel is permitted to make the decision in each case is because, with the myriad possible facts and circumstances involved in any trial, it is "difficult to assess whether a Downs-type instruction 'is beneficial to a particular defendant . . . .'" Id. at 148. The court concluded that, despite the apparent point of its language, the Downs instruction may "have the opposite of the intended effect, that is, it will cause the jury specifically to focus on the absence of breathalyzer evidence." Id. at 146. The court concluded, given the double-edged nature of the instruction, that rather than articulating a blanket prohibition, the "safer approach is

to leave such an instruction to the defendant's choice."  <u>Id</u>. at 148.

In this case, the judge improperly gave the <u>Downs</u> instruction over the defendant's objection:  The jury, recognizing the breathalyzer machine in the booking video -- and I agree with the court majority's conclusion that there was no error in the judge's ex ante decision to allow that video to be shown -- asked "Was the standard [b]reathalyzer test offered or refused?  The test equipment was visible in the booking room."

In fact, if the representations of counsel at trial were correct, the test was either offered and taken by the defendant or never offered to him.  <u>He did NOT refuse the test</u>.  We don't know the results, we couldn't in any event know whether they were accurate, and they were not submitted to the jury.  This is because, according to the prosecutor, the machine had not been calibrated.[1]  The lack of calibration led the District Attorney

---

[1] The court majority may be read to suggest this has something to do with the grave problems with the Draeger Alcotest 9510 breathalyzer device, see <u>ante</u> at        n.7, but there is nothing in the record indicating that the Alcotest 9510 was the issue in this case.  For some period of time, the District Attorneys were not utilizing the results of tests conducted with the Alcotest 9510 due to failures with respect to the procedures for calibrating and certifying the machines, as well as "egregious government conduct" by the State police office of alcohol testing (OAT) in covering up hundreds of failed calibration tests with respect to this machine.  See generally <u>Commonwealth v. Hallinan</u>, 491 Mass. 730, 748 (2023).  The court majority says that "[t]he period of presumptive exclusion of Draeger Alcotest 9510 breathalyzer results in OUI

properly to conclude the reliability of the breathalyzer test results could not be known and thus they could not be introduced in court.

When the judge received the jury's question, she asked defense counsel if he wanted the Downs instruction. Although no one mentioned or appeared aware of Wolfe, defense counsel said he did not, and specified that "I'm concerned about the negative inference that [the Downs instruction] would provide, that they would infer that he refused it." Counsel instead proposed an alternative instruction, one that had, he said, been given in another case in which the jury asked a similar question, that "that [the] Commonwealth [was] not using [b]reathalyzer tests at all during that period of time." Again he stated, "I would request that that instruction be given, given the circumstances and the fact that they saw [the] machine because of the inference that might be drawn even after your instruction that he refused to test." The proposed instruction would have

prosecutions ended April 18, 2019 -- three months before the defendant's arrest," ante n.7, but that is only half true. This refers only to the court order creating that presumption, and the Superior Court lifted that presumption after the arrest in this case, retroactively to April 18, 2019, see Hallinan, supra at 743; there is nothing in the record about how the District Attorney's Office for Middlesex County handled Alcotest 9510 test results, nor when it concluded that test results from the Alcotest 9510 could be known to be reliable, and thus concluded they could be introduced in court. In any event, none of this has anything to do with when the particular device used in this case was actually calibrated.

informed the jury that the Commonwealth was not using breathalyzer tests, at least from this machine, at the time the defendant was arrested, and would have obviated any speculation about whether he had refused a test.  The judge, however, rejected the instruction, and overruled the objection, saying, "I think [the Downs instruction is] the appropriate instruction to give, and it's what we typically give."

It was error for the judge to give the jury the Downs instruction over the objection of the defendant.  See Wolfe, 478 Mass. at 150 ("In this case, the instruction regarding alcohol-test evidence was given over the defendant's objection.  Based on our analysis today, this was error.").[2]  Prejudice was shown with about as much strength as it ever could be.  In assessing prejudice, "we inquire[] whether there is a reasonable

_____

[2] The Commonwealth states that "the defendant preserved the issue."  The court majority's sua sponte suggestion he did not is incorrect.  When the judge proposed the Downs instruction, defense counsel said, "I'm concerned about the negative inference that that would provide, that they would infer that he refused it," which was an objection to the instruction.  Defense counsel proposed an instruction, and the judge rejected it, saying "I think [the Downs instruction is] the appropriate instruction to give. . . .[i]f you're objecting to me giving that instruction and you want to craft something else for me to give then -- I'm happy to consider it."

The judge's subsequent statement that she would consider some other instruction if proffered by the defendant cannot undo the defendant's previous objection which was overruled; a judge cannot condition the right to make an objection on counsel providing a different instruction; nor can a judge give an erroneous instruction because the objecting defendant has not given the judge an alternative to which the judge agrees.

possibility that the error might have contributed to the jury's verdict" (citation omitted). Id. Here, the jury itself noted the breathalyzer machine it saw and asked if the defendant had refused to take a breathalyzer test. Given that defense counsel, given authority over the question by Wolfe, determined (and explicitly stated) that there was a risk the jurors would infer that the defendant refused the test if the Downs instruction were given," as in Wolfe, "we cannot fairly say that 'the jury would have inevitably reached the same result if the judge had omitted the challenged instruction.'" Wolfe, 478 Mass. at 151, quoting Commonwealth v. Buiel, 391 Mass. 744, 747 (1984).

The court majority seeks to shoehorn this case into the language of the Wolfe opinion that the Downs instruction might properly be given if there is "some rare set of facts that specifically directs the jury's attention to the absence of alcohol-test evidence." Wolfe, 478 Mass. at 150.[3] This is not that rare case. To begin with, the Wolfe opinion clearly did not intend the "rare set of facts" exception to apply to a question by the jury about whether there was an offer of, or a

_____

[3] Given my lengthy discussion of this language here, I am baffled by the majority's suggestions that I "overstate[] the holding of Wolfe" by ignoring that language. See ante at      n. 8. As the reader can see, I don't ignore it, I explain why it is inapplicable here, something to which the majority proffers no reply.

refusal to take, a breathalyzer test. It included a footnote immediately after that phrase making clear that such "a question about the absence of alcohol-test evidence" did not warrant giving the Downs instruction over a defendant's objection. See id. at 150 n. 13. In fact, the court in Wolfe said that it had "trouble imagining" a case where giving a Downs instruction over the defendant's objection could be justified, id. at 142 n.2. Yet it clearly imagined, indeed it discussed, an example in which a question like that at issue in this case was asked by the jury, indicating that such a question cannot justify giving a Downs instruction over objection. Further, the "rare set of facts" mentioned by the court must refer to the facts in evidence, because what is being permitted is an instruction that is designed to, and in some circumstances may, prophylactically prevent speculation. Once the jury has itself already asked about whether a breathalyzer was offered or refused, the risk of the Downs instruction is heightened, not reduced. Contrary to the majority's conclusion that "the judge's determination that a Downs-type instruction was necessary in these circumstances was logical and sensible," ante at      , the decision to give the instruction contradicts the very legal premise of Wolfe and was legal error under that decision. Again, the court explained that when such a question is asked, the Downs instruction should not be given over the defendant's objection. Moreno, 102 Mass.

App. Ct. at 323, in which defense counsel agreed to the Downs instruction, is not to the contrary.

The court majority asserts that unlike this case, the jury question discussed in Wolfe was not based on evidence that included "the presence of a breathalyzer machine," as though that distinction makes this a stronger case for giving the Downs instruction.  To the contrary, it makes this a weaker case for giving that instruction.  Here, the jury had not merely asked about a breathalyzer test, they noted that they had seen the breathalyzer machine!  The concern about the jury using Downs to focus on the possibility of refusal thus is heightened, not diminished, when compared with a generic question about breathalyzer tests.

The court majority, however, actually praises the "forceful[]" use of "the more specific Downs admonition," apparently because "the breathalyzer issue was squarely in the mind of the jury, and that inasmuch as the booking video would necessarily remain with the jurors in the deliberation room," without the Downs instruction, "the breathalyzer question was not likely to leave their focus."  Ante at        .

But the entire point of Wolfe is that the presumption on which the majority opinion rests, that the Downs instruction is an admonition that will work to eliminate the jury's focus on the absence of a breathalyzer test, does not always apply to the

Downs instruction. Wolfe, 478 Mass. at 147. The court could not have been clearer that the basis of its decision was that the Downs instruction may "have the opposite of the intended effect, that is, it will cause the jury specifically to focus on the absence of breathalyzer evidence." Wolfe, supra at 147-148. In its reality-based decision, the Supreme Judicial Court gave defense counsel the authority to determine when that was not a problem, and held the Downs instruction may not be given over defendant's objection.

The defendant in this case did not refuse a breathalyzer, but when the jury asked if he had, the judge improperly provided them, over the defendant's objection, an instruction that "suggest[s] that the defendant may have refused a test or feared an unfavorable result." Moreno, 102 Mass. App. Ct. at 327. He is entitled to a new trial. With respect, I dissent.