NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1198

COMMONWEALTH

vs.

CHARLES A. MORSE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial, the defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor (OUI).  We discern in the defendant's various claims of error no cause to disturb the judgment, and affirm.

1.  Sufficiency of the evidence.  In a brief filed pursuant to Commonwealth v. Moffett, 383 Mass. 201, 208-209 (1981), the defendant argues that the evidence introduced at trial was insufficient to prove that he operated his vehicle on a public way or in a public place.[1]  The law is settled, however, that "a parking lot that members of the public may use to visit a

_____

[1] The defendant does not challenge the sufficiency of the evidence that he operated the vehicle and that he was under the influence of intoxicating liquor, the other two elements of OUI.  See G. L. c. 90, § 24 (1) (a) (1).

restaurant, bar, shop, and beach, all open to the public, is a public way or place." Commonwealth v. Tsonis, 96 Mass. App. Ct. 214, 214 (2019). In the present case, the defendant operated his vehicle in the parking lot of Kennedy's Restaurant, which was open for business at the time. Accordingly, the evidence was sufficient to establish that he was in a public place during the charged incident.

2. Hearsay. The defendant claims that certain testimony of the restaurant manager, Michael Kennedy, and the police officers who responded to the scene amounted to inadmissible hearsay that deprived him of a fair trial. As the defendant did not object to any of the now-challenged testimony at trial,[2] we "consider whether the evidence was admissible and, if not, whether its admission created a substantial risk of a miscarriage of justice." Commonwealth v. Steed, 95 Mass. App. Ct. 463, 469 (2019).

When asked about the circumstances surrounding his call to the police, Kennedy testified that "[his] staff was attending to the issue that they reported to [him]" and that he was "calling under their direction."[3] The defendant challenges Kennedy's

---

[2] The defendant raised a general hearsay issue before trial without specifying the statements he challenged.
[3] Though Kennedy affirmed that the call was regarding the defendant, defense counsel objected to this answer, and the judge sustained the objection.

2

testimony as improper hearsay.[4]  To the contrary, the challenged

statements were not hearsay, as they were based on Kennedy's

personal observation and did not convey any content of his

staff's "report" or "direction."  See Commonwealth v. Ortiz-

Soto, 49 Mass. App. Ct. 645, 647 n.2 (2000) (testimony based on

personal observation not hearsay).

The officers' testimony regarding their arrival at the

restaurant parking lot was likewise not hearsay.  Contrary to

the defendant's assertion, Officer Alex Sleeper did not testify

about the call he received regarding the defendant; rather, he

testified that he "responded to the scene and located a vehicle

in the parking lot."[5]  Officer Kyle Skagerland testified that he

and Officer Sleeper "were alerted to a certain vehicle to be

looking for."  This testimony merely provided context for the

officers' arrival at the restaurant parking lot and was

admissible to show "the state of police knowledge which impelled

the approach to the defendant" (citation omitted).  Commonwealth

---

[4] In his brief, the defendant mischaracterizes the testimony by
arguing that "[s]tatements by the bartender to Kennedy that
prompted the latter to call the police on the patron (Morse) and
direct the police to where Morse was parked" were inadmissible
hearsay.  Kennedy, however, did not testify to any of these
statements.  Moreover, as the Commonwealth points out, nothing
in the record indicates that Kennedy directed the police to the
defendant; in fact, Kennedy testified that he did not "remember
speaking directly with the police."
[5] Though Officer Sleeper confirmed that he saw a vehicle that
matched the report he received, defense counsel objected to this
answer, and the judge sustained the objection.

3

v. Cohen, 412 Mass. 375, 393 (1992).  See id. ("an arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct" [citation omitted]).  None of the now-challenged statements contained details of the underlying events that led to the police response.  They were not hearsay and were thus admissible.

3.  Testimony regarding field sobriety tests.  The defendant contends that Officer Sleeper's description of his training and experience and his determination that the defendant "failed" the field sobriety tests (FSTs) transformed his testimony into an expert opinion, and that the judge thus erred in precluding defense counsel's questions to Officer Sleeper about the scientific reliability of FSTs.[6]  As the defendant did not object to the judge's ruling, we review for a substantial risk of a miscarriage of justice.[7]  See Commonwealth v. Delaney, 425 Mass. 587, 597 (1997).

---

[6] The defendant also claims that the judge should have allowed defense counsel's questions about the scientific reliability of FSTs because the answers are in the FST training manual he appended to his brief.  As the Commonwealth points out, however, this manual was never admitted in evidence, and the defendant further failed to establish any foundation as to whether Officer Sleeper was familiar with or trained on the manual.

[7] When defense counsel asked Officer Sleeper about the scientific reliability of FSTs, the prosecutor objected, and the judge sustained the objection.  Defense counsel did not object to this ruling.

A police officer may testify "regarding his training and experience in OUI investigations, including field sobriety tests." Commonwealth v. Moreno, 102 Mass. App. Ct. 321, 325 (2023). Moreover, "[t]he testimony of a police officer about the results of ordinary field sobriety tests . . . is lay witness testimony, not expert witness testimony." Commonwealth v. Brown, 83 Mass. App. Ct. 772, 774 n.1 (2013).

Officer Sleeper's testimony did not transform him from a lay witness to an expert witness. He properly testified as to his training and experience, explaining that he was trained to look for physical signs of intoxication such as slurred speech, bloodshot or glassy eyes, and unsteadiness on feet. See Moreno, 102 Mass. App. Ct. at 323. In addition, Officer Sleeper opined that the defendant "failed" the walk-and-turn test and the one-legged stand test, based on his training and experience and his observations of the defendant's diminished balance and coordination.[8] See id. at 324. On this record, and in the absence of findings based on expert testimony discrediting the validity of FSTs to detect impairment based on alcohol

---

[8] Officer Sleeper described that during the walk-and-turn test, the defendant missed heel-to-toe on some of the steps and swayed back and forth, and during the one-legged stand test, the defendant did not raise his leg straight and "at some point he had to put both feet back on the ground to save himself from falling." What Officer Sleeper saw during these tests was "within the scope of a juror's common experience of intoxication." Moreno, supra at 325.

consumption, Officer Sleeper's use of the word "fail" to describe the defendant's performance on the FSTs was not improper. There was thus nothing in Officer Sleeper's testimony that risked transforming him into an expert witness, cf. Commonwealth v. Canty, 466 Mass. 535, 541 n.5 (2013), and no substantial risk of a miscarriage of justice in the judge's preclusion of questions about the scientific reliability of FSTs.

The defendant's claim that the judge erred in allowing Officer Sleeper to testify how he typically administers the one-legged stand test is also unavailing. As the defendant objected to this testimony, we review for prejudicial error. See Commonwealth v. Hobbs, 482 Mass. 538, 558 (2019). Contrary to the defendant's contention, Officer Sleeper's testimony was not "habit evidence." Cf. Mass. G. Evid. § 406(b) (2023) ("[e]vidence of an individual's personal habit is not admissible to prove action in conformity with the habit on a particular occasion"). Officer Sleeper stated that he could not recall how long he asked the defendant to hold up his leg during the one-legged stand test. His testimony that he typically conducts the test for thirty seconds did not create an inference that he did so in the instant case. There was thus no prejudicial error.

4. <u>Ineffective assistance of counsel</u>. The defendant claims that defense counsel was ineffective for failing to (i)

6

object to inadmissible hearsay and (ii) impeach Officer Sleeper's credibility with a FST training manual. He raises this claim in its weakest form, having failed to file a motion for new trial in which he could have laid a foundation for admission of the manual.[9] See Commonwealth v. Zinser, 446 Mass. 807, 810-811 (2006).

Since (as we have explained) the testimony that the defendant challenges was admissible, we conclude that defense counsel was not ineffective for failing to object. Assuming, without deciding, that defense counsel could have laid the proper foundation to impeach Officer Sleeper's credibility with the FST manual, counsel's failure to do so also was not ineffective. As explained above, the record provides no indication that Officer Sleeper was familiar with or trained on the manual. Furthermore, "[g]enerally, failure to impeach a witness does not amount to ineffective assistance of counsel," and "absent counsel's failure to pursue some obviously powerful form of impeachment available at trial, it is speculative to conclude that a different approach to impeachment would likely have affected the jury's conclusion." Commonwealth v. Fisher, 433 Mass. 340, 357 (2001). Here, defense counsel cross-examined

_____

[9] We again note, see note 6, supra, that the copy of the manual appended to the defendant's brief, dated December 1, 2006, was not offered in evidence at trial and is not part of the record in this appeal.

7

Officer Sleeper regarding the FSTs he administered, including his lack of memory of the exact purpose of FSTs and some of the specifics of the walk-and-turn test and the one-legged stand test. Defense counsel was not required to "present expert or documentary evidence to support [her] argument" that Officer Sleeper incorrectly administered the FSTs. Commonwealth v. Hensley, 454 Mass. 721, 736 (2009).

5. Admission of photograph. The defendant argues that the judge erred in admitting a photograph depicting a case of beer and a makeshift cooler in the front passenger seat of the defendant's vehicle, as it was not relevant to any issue before the jury. Since the defendant did not object to the admission of the photograph, we review for a substantial risk of a miscarriage of justice. See Steed, 95 Mass. App. Ct. at 469.

We conclude that the photograph was relevant because the presence of beer in the defendant's vehicle may be understood as a "sign of alcohol use." Commonwealth v. Flanagan, 76 Mass. App. Ct. 456, 458 n.3 (2010). See Commonwealth v. Arroyo, 442 Mass. 135, 144 (2004) ("The relevance threshold for the admission of evidence is low"). The defendant does not make any argument that the photograph was unfairly prejudicial, but in any event, the fact that Officer Skagerland could not recall finding any empty container of alcohol in the defendant's vehicle significantly mitigated the potential for improper

8

prejudice to the defendant.[10]  The photograph was admissible, and thus, there was no substantial risk that justice miscarried.

6.  Jury instructions regarding opinion and FST evidence. We also are unpersuaded by the defendant's argument that the judge's failure to give, sua sponte, supplemental jury instructions on the assessment of (i) opinion testimony concerning a defendant's sobriety and (ii) evidence of a defendant's performance on FSTs, created a substantial risk of a miscarriage of justice.[11]  See Instruction 5.310 of the Criminal Model Jury Instructions for Use in the District Court (2019).[12]

A trial judge has "considerable discretion in framing jury instructions, both in determining the precise phraseology used and the appropriate degree of elaboration."  Commonwealth v. Newell, 55 Mass. App. Ct. 119, 131 (2002).  In reviewing jury instructions, we evaluate them "as a whole" (citation omitted).  Commonwealth v. Vargas, 475 Mass. 338, 349 (2016).

Here, the judge properly instructed the jury on their role to decide whether to credit the evidence they heard, and on their discretion to disbelieve some or all of a witness's

_____

[10] Officer Skagerland also testified that he did not know whether the beer cans in the case were opened or closed.
[11] As the defendant did not object to the omission of these instructions, we review for a substantial risk of a miscarriage of justice.  See Commonwealth v. Washington, 449 Mass. 476, 488 (2007).
[12] The defendant relies on the 2019 version of Instruction 5.310 that was in effect at the time of trial.

9

testimony.  The supplemental jury instructions the defendant now asserts the judge should have administered would have largely repeated these general admonitions to the jury.  We thus discern no substantial risk of a miscarriage of justice.[13]

7.  <u>Jury instruction regarding breathalyzer</u>.  When the jury asked whether the defendant was given a breathalyzer test, the judge, as requested by defense counsel, (i) reminded the jury to decide the facts solely based on the evidence at trial,[14] and (ii) gave an instruction, pursuant to <u>Commonwealth</u> v. <u>Downs</u>, 53 Mass. App. Ct. 195, 198-199 (2001), on the absence of breathalyzer evidence.  On appeal, the defendant maintains that instead of responding with these instructions, the judge sua sponte should have instructed the jury that the defendant took a breathalyzer test, but "for reasons the jury may not speculate about, the result is not before them."  The defendant further invites us to give "future similarly situated defendants" the option of requesting the instruction he suggests.

---

[13] We also note that during the jury charge conference, the judge asked defense counsel if she was requesting any jury instructions on FSTs, and defense counsel responded in the negative.  "[I]n the absence of any request by the defendant for such an instruction, . . . the judge was not required to give the instruction sua sponte."  <u>Commonwealth</u> v. <u>Tavares</u>, 471 Mass. 430, 439 (2015).

[14] The judge told the jury to imagine all the evidence in a box, that their verdict must be based on what was inside the box, and that they must avoid speculation, conjecture, or guesswork.

We reject this invitation, as it is beyond this panel's authority to establish a new rule regarding jury instructions.[15] In any event, the defendant's proposed instruction is based on a fact not in evidence. As the defendant concedes, the fact that the defendant may have taken a breathalyzer test was not adduced at trial. See Commonwealth v. Willard, 53 Mass. App. Ct. 650, 658 (2002) ("There is no requirement that a judge charge on factual situations . . . which are unsupported by evidence" [citation omitted]). See also Commonwealth v. Derosier, 103 Mass. App. Ct. 518, 524 n.9 (2023) (claim of error in giving of Downs instruction not preserved by proposal of own "unique" version). There was thus no substantial risk of a miscarriage of justice.

Judgment affirmed.

By the Court (Green, C.J.,
Milkey & Grant, JJ.[16]),

*Joseph F. Stanton*

Clerk

Entered: November 27, 2023.

---

[15] The Supreme Judicial Court "retain[s] as part of [its] superintendence power the authority to regulate the presentation of evidence in court proceedings[,]" including mandating jury instructions. Commonwealth v. DiGiambattista, 442 Mass. 423, 444-445 & 448 (2004).
[16] The panelists are listed in order of seniority.